STATE OF NORTH CAROLINA v. OBIE CARRINGTON, JR.

No. 7715SC575

(Filed 17 January 1978)

**1. Criminal Law § 11— accessory after the fact— sufficiency of indictments**

  Indictments were sufficient to charge defendant with the crimes of being an accessory after the fact to murder and armed robbery by an unknown black male after the court struck references in the indictments to a named person who had earlier been acquitted of the murder and robbery.

**2. Criminal Law § 11; Indictment and Warrant § 12.2— accessory after fact—indictment—striking reference to named principal**

 The trial court did not err in striking any reference to "Arthur Parrish" from indictments charging defendant with being an accessory after the fact to murder and armed robbery by Arthur Parrish and another unknown black male since the change in the indictments did not expand the charges against defendant and did not constitute an amendment prohibited by G.S. 15A-923(e).

**3. Indictment and Warrant § 12— meaning of "amendment"**

 As used in the statute prohibiting the amendment of an indictment, G.S. 15A-923(e), amendment means any change in the indictment which would substantially alter the charge set forth in the indictment.

**4. Criminal Law § 11— accessory after the fact—instructions—specific intent**

 The trial court in a prosecution for being an accessory after the fact to murder and armed robbery did not err in failing to instruct on "specific intent" to aid the principal.

APPEAL by defendant from *Baley, Judge.* Judgment entered 4 March 1977 in Superior Court, ORANGE County. Heard in the Court of Appeals 16 November 1977.

In March 1975, defendant Carrington was indicted for the murder and armed robbery of Otis Rigsbee, Jr. An alleged co-defendant, Arthur Parrish, was tried in June 1976, for the murder and armed robbery of Otis Rigsbee, Jr., and Parrish was acquitted. On 2 August 1976, defendant Carrington was reindicted both as a principal and as an accessory before the fact to Arthur Parrish, and "one other black male, name unknown," in the murder and robbery. Defendant was acquitted as a principal but a hung jury caused the court to declare a mistrial on the charge of accessory before the fact.

On 20 September 1976, three days after the mistrial was declared, defendant was indicted on new charges of accessory after the fact to Arthur Parrish and an unknown black male in the murder and armed robbery of Otis Rigsbee, Jr. Defendant was also indicted for the felonious receipt of stolen property.

At defendant's trial in February 1977, the State put on evidence tending to show that defendant had been employed for about two years at Rigsbee's Liberty Market, the scene of the alleged murder and robbery, in Durham. Mrs. Mary Rigsbee, the wife of the deceased, Otis Jackson (Jack) Rigsbee, Jr., and Otis Jackson Rigsbee both testified that it was normal procedure for opening the business that one of the Rigsbees would unlock the

padlock on the front door at approximately 5:00 a.m. and would hook the lock on the inside of the door without locking it. Until 7:00 a.m. only one person would be in the market unless the other Rigsbee arrived early. The back door to the market would never be opened until after 7:00 a.m. at which time more than one employee would be present.

On Monday, 17 February 1975, according to State's witness, Donna Garner, an employee of Liberty Market, Arthur Parrish, who had been in the market on numerous occasions, came in and talked briefly with the defendant. On the morning of 18 February 1975, Otis Jackson Rigsbee was in Florida, and Jack Rigsbee was to open the market. According to the testimony of his wife, he left home at about 4:30 a.m. Arthur Holland, a deliveryman, stated that he normally arrived at Liberty Market a few minutes before 6:00 a.m. when the store normally opened. On Tuesday, 18 February 1975, Holland and William Young, another deliveryman, waited for a while at the front of the store, but had to leave without completing their deliveries. Neither man saw any activity in the store. A little before 7:00 a.m., Ernest Lee Tilley, an employee at Liberty Market, arrived and found the store unopened. Tilley was summoned by defendant to come across the street to a cafe for breakfast.

After breakfast Tilley and defendant went back to the market where Tilley noticed that the front door had been unlocked and the padlock moved to the inside. Getting no response at the front door, Tilley went behind the market, saw Jack Rigsbee's car, and found the backdoor unlocked. Tilley let defendant in the front door, and they both looked for Rigsbee. When they could not find him, defendant called the police. While defendant was phoning the police, Tilley let a meat deliveryman into the store, and they found the body of Rigsbee in the meat cooler.

Albert Dorsett-Williams testified for the State that twice on 18 February 1975, defendant had come into Soundhaus, a retail stereo store, and on the second occasion had purchased $625 worth of component stereo equipment. Defendant paid for the equipment with a stack of small bills and signed a receipt as James Johnson. Glenda Clements, who was living with the defendant on 18 February 1975, testified that on the Sunday before 18 February 1975, defendant told her that he was going to visit his

mother on the 18th and that he would leave home about 5:00 a.m. She also testified that in December 1976, defendant told her that on 18 February 1975 he had picked up Arthur Parrish, had taken him to the market and then home again. She stated that defendant further told her that a third person had hidden upstairs at the Liberty Market on Monday, 17 February, and "that was the way they entered the Market, or he, or whoever."

Dr. June Gunter, an expert in pathology, testified that he had conducted an autopsy on Jack Rigsbee and that either of two chest wounds or a neck wound would have caused death.

A Durham police officer, Edward Sarvis, testified that on 20 February, he requested that the defendant come to the station house after Rigsbee's funeral. At that time defendant admitted "ripping off" a few dollars from the market and consented to take police officers to his home to get the money. There police officers discovered $960. After defendant and the police officers had returned to the police station, defendant made and signed a statement which was allowed into evidence.

The defendant was acquitted of the crime of accessory before the fact of the crimes of murder and robbery with a dangerous weapon. He was found guilty as accessory after the fact of the crimes of murder and robbery with a dangerous weapon, and guilty of feloniously receiving stolen property. Defendant appeals.

*Attorney General Edmisten, by Associate Attorney Thomas F. Moffitt and Assistant Attorney General Sandra M. King, for the State.*

*James V. Rowan and Anthony J. Bocchino for defendant appellant.*

ARNOLD, Judge.

I.

Defendant moved to dismiss the indictments charging him with being an accessory after the fact to Arthur Parrish who had earlier been acquitted. The trial court denied the motion, but it excised mention of Parrish from the indictments which also charged defendant with being an accessory after the fact to an

unknown black male. Defendant now argues that the action of the trial court denied him his due process rights under both the United States and North Carolina Constitutions. We cannot agree.

[1] The United States Supreme Court has held that an indictment is sufficient if it, "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117, 41 L.Ed. 2d 590, 620, 94 S.Ct. 2887, 2907 (1974). In applying these two tests to the indictments we find that the trial court did not err in denying defendant's motion to dismiss. Portions of the original indictment charging defendant with being an accessory after the fact of first degree murder demonstrate the clarity of the charge against defendant and allow defendant to plead any conviction in bar of future prosecutions:

"THE JURORS FOR THE STATE UPON THEIR OATH PRESENT that on or about the 19th day of February, 1976, in Durham County Obie Carrington, Jr. unlawfully and wilfully did feloniously give aid and assistance to (Arthur Junior Parrish and) one (other) black male, name unknown, who had unlawfully, wilfully and feloniously killed and murdered Otis Jackson Rigsbee, Jr., during an Armed Robbery of the said Otis Jackson Rigsbee, Jr., at Rigsbee's Liberty Market, 349 West Main St., Durham, N. C. on the 18th day of February, 1975. At the  time of the giving of aid and assistance, the defendant knew that (Arthur Junior Parrish and) the aforesaid (other) black male, name unknown, had committed the felony of Murder, by killing Otis Jackson Rigsbee, Jr., while robbing him with dangerous weapons."

The indictment charging defendant with being an accessory after the fact of armed robbery is equally clear.

[2] Defendant argues further that the trial court erred in striking reference to Arthur Parrish. Defendant submits that, under *United States v. Dawson*, 516 F. 2d 796 (9th Cir.), *cert. denied sub nom Dawson v. United States*, 423 U.S. 855, 46 L.Ed. 2d 80, 96 S.Ct. 104 (1975), the focal point in questioning the permissibility of a change made in the indictment appears to be whether the change involves a broadening or a narrowing of the charge.

However, defendant incorrectly argues that the omission of any reference to Arthur Parrish expands the charge. The State was still required to prove all the elements of accessory after the fact; given the rather elusive evidence available concerning the unknown black male, the State's task was considerably greater when it was required to show that defendant aided and assisted that unknown man.

[3] This court is cognizant of G.S. 15A-923(e), which states that no bill of indictment may be amended. Nothing in that statute or in North Carolina case law defines the term "amendment." Since we must interpret statutes in a manner which would avoid illogical consequences, *see, e.g. Helms v. Powell,* 32 N.C. App. 266, 231 S.E. 2d 912 (1977), we define "amendment" to be any change in the indictment which would substantially alter the charge set forth in the indictment. No such change was made in the present case.

## II.

An assignment of error closely related to the previous one is the alleged error of the trial court in admitting evidence concerning Arthur Parrish, in referring to Arthur Parrish during jury instructions, and in instructing the jury that the defendant had been indicted and charged with aiding, counselling and procuring Parrish and another to kill and rob Jackson Rigsbee, Jr. Evidence about Arthur Parrish was an inevitable part of the trial, and we can find no error in its admission. In its instructions to the jury, the trial court, by necessity, referred to Arthur Parrish.

In reviewing the jury instructions we find error only in the court's reference to defendant's indictment as an accessory before the fact. This error, however, was not prejudicial to defendant inasmuch as he was acquitted of the charges relating to accessory before the fact. Furthermore, in the court's instructions, the jury was repeatedly charged that in order to find defendant guilty of accessory after the fact of murder and of robbery it had to find beyond a reasonable doubt that an unknown black male committed these crimes. Viewing the instructions as a whole they contain no error prejudicial to defendant.

## III.

[4] The final assignment of error which we consider is defendant's argument that the trial court erred when, in responding to

the jury's request, it reinstructed the jury concerning the charges of accessory after the fact of murder and armed robbery. While the trial court restated the law very briefly, we can find, in construing the full context of the charge, *State v. Sanders*, 288 N.C. 285, 218 S.E. 2d 352 (1975), *cert. denied sub nom Sanders v. North Carolina*, 423 U.S. 1091, 47 L.Ed. 2d 102, 96 S.Ct. 886 (1976), no error prejudicial to defendant. Defendant's argument that the court erred in failing to instruct on "specific intent" to aid the principal is not supported by North Carolina law. *See* G.S. 14-7 and cases annotated thereunder.

We have reviewed defendant's other contentions but find in them

No error.

Judges MORRIS and HEDRICK concur.