STATE OF NORTH CAROLINA v. CORRIE MAURICE MAY

No. COA02-1158

(Filed 15 July 2003)

## 1. Indictment and Information— obtaining property by false pretense—amendment to date of offense

The trial court did not commit plain error in an obtaining property by false pretense case by permitting the State to amend the date of offense on the indictment to accurately reflect the date of the offense rather than the date of arrest, because: (1) the date was not an essential element of the crime; and (2) the change in the date on the indictment did not affect defendant's planned defense.

## 2. Motor Vehicles— obtaining property by false pretense— driver's license

The trial court did not commit plain error in an obtaining property by false pretense case by entering judgment on the false pretense charge involving a driver's license, because an officer's testimony directly supported the indictment's allegation that defendant misrepresented both his identity and his name to an officer in order to procure a driver's license issued to defendant's alias.

## 3. Motor Vehicles— obtaining property by false pretense— driver's license—sufficiency of evidence

The trial court did not commit plain error in an obtaining property by false pretense case by allowing the false pretense claim involving the driver's license to go to the jury even though defendant contends an officer admitted he did not recall defendant or having any conversation with him, and that it was feasible the license found on defendant came from some other source, because: (1) the transcript revealed that the officer remembered all the essential facts; and (2) defense counsel's characterization of the officer's testimony did not comport with the transcript.

**4. Criminal Law— no contest plea—factual basis—consequences**

The trial court did not commit plain error in an obtaining property by false pretense case by accepting defendant's no contest plea to both the false pretense charge involving tire rims and the accompanying habitual felon charge, because: (1) a factual basis existed for the plea regarding the false pretense charge based on the facts presented by the State and defendant's stipulation; (2) a factual basis existed for the plea regarding the habitual felon indictment when habitual felon status had already been established using the same underlying offenses in the false pretense charge involving a driver's license; and (3) the trial court sufficiently explained the consequences of defendant's no contest plea.

Appeal by defendant from judgments entered 2 January 2002 by Judge J.B. Allen, Jr. in Wake County Superior Court. Heard in the Court of Appeals 5 June 2003.

*Attorney General Roy Cooper, by Assistant Attorney General James C. Holloway, for the State.*

*George E. Kelly, III, for defendant-appellant.*

CALABRIA, Judge.

Corrie Maurice May ("defendant") appeals two judgments entered on two charges of obtaining property by false pretense, each accompanied by a separate indictment charging defendant with attaining habitual felon status. We find no error.

On 15 June 2001, defendant was apprehended by Raleigh Police Officer Kevin Gregson ("Officer Gregson") while exiting a department store after Officer Gregson learned defendant had an outstanding arrest warrant for robbery with a dangerous weapon and obtaining property by false pretense. Officer Gregson called out "Hey, Corrie" and defendant responded "What." Officer Gregson then asked defendant if he was Corrie May, and defendant confirmed he was. At that point, Officer Gregson placed defendant under arrest; defendant protested, asserting his name was Fred Campbell and asking Officer Gregson to confirm his identity by checking the driver's license in his pocket. Officer Gregson removed the driver's license from defendant's pocket. The license was issued 30 January 2001, bore the name "Fred Alfonso Campbell, III," and pictured defendant. Defendant was

arrested, taken into custody, and fingerprinted. Fingerprint analysis revealed defendant was Corrie May.

Defendant was indicted for obtaining property by false pretense for possessing the false driver's license and for charges relating to the outstanding arrest warrant for robbery with a dangerous weapon and obtaining property by false pretense involving tire rims. Both indictments were accompanied by charges for attaining habitual felon status.

On 2 January 2002, defendant's case was called for trial in the Wake County Superior Court, the Honorable J.B. Allen, Jr. presiding. The trial court allowed amendment of the indictment for the false pretense charge involving the driver's license and the accompanying habitual felon indictment to reflect the correct date of the offense, 30 January 2001, rather than 15 June 2001, the date of arrest.

The State's evidence consisted of testimony by Officer Gregson and DMV Driver License Examiner Glen Barefoot ("Officer Barefoot"). Defendant presented no evidence, and the jury found defendant guilty. Defendant then pled no contest to the accompanying habitual felon charge, and was sentenced to 80 to 105 months' imprisonment. In the same session of court, defendant pled "no contest" to the other charges of obtaining property by false pretense involving tire rims and of attaining habitual felon status. The court sentenced defendant to 80 to 105 months' imprisonment to run concurrently with his first sentence. Defendant appeals.

Because defendant failed to object at trial, defendant asserts the trial court committed plain error by: (I) permitting the State to amend the date of offense on the indictments; (II) entering judgment on the false pretense charge involving the driver's license; (III) allowing the false pretense claim involving the driver's license to go to the jury; and (IV) accepting defendant's no contest plea to both the false pretense charge involving tire rims and the accompanying habitual felon charge.

"In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C.R. App. P. 10(b)(1) (2003).

In criminal cases, a question which was not preserved by objection noted at trial and which is not deemed preserved by rule or

law without any such action, nevertheless may be made the basis of an assignment of error where the judicial action questioned is specifically and distinctly contended to amount to plain error.

N.C.R. App. P. 10(c)(4) (2003). Plain error is " '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done . . . grave error which amounts to a denial of a fundamental right . . . a miscarriage of justice or . . . the denial to appellant of a fair trial[.]' " *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982)) (emphasis in original). "It is axiomatic that '[a] prerequisite to . . . engaging in a "plain error" analysis is the determination that the [action] complained of constitutes "error" at all.' " *State v. Parks*, 96 N.C. App. 589, 593, 386 S.E.2d 748, 751 (1989) (quoting *State v. Johnson*, 320 N.C. 746, 360 S.E.2d 676 (1987)). For the reasons that follow, we hold the trial court did not err.

I. Amendment to the Indictments

[1] Defendant asserts the trial court committed plain error by permitting the State to amend the date appearing on the indictments to accurately reflect the date of the offense rather than the date of arrest. Defendant contends this constituted a substantial alteration in violation of N.C. Gen. Stat. § 15A-923(e) (2001).

North Carolina General Statute § 15A-923(e) states "[a] bill of indictment may not be amended."

> This statute, however, has been construed to mean only that an indictment may not be amended in a way which "would substantially alter the *charge* set forth in the indictment." *State v. Carrington*, 35 N.C. App. 53, 240 S.E.2d 475, *disc. rev. denied*, 294 N.C. 737, 244 S.E.2d 155 (1978). Thus, for example, where time is not an essential element of the crime, an amendment relating to the date of the offense is permissible since the amendment would not "substantially alter the charge set forth in the indictment." *State v. Price*, 310 N.C. 596, 598-99, 313 S.E.2d 556, 559 (1984).

*State v. Brinson*, 337 N.C. 764, 767, 448 S.E.2d 822, 824 (1994) (emphasis in original). Accordingly, allowing amendment of the indictment would not constitute reversible error unless the date was an essential element of the crime.

The elements of the crime of obtaining property by false pretense are "(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another." *State v. Cronin*, 299 N.C. 229, 242, 262 S.E.2d 277, 286 (1980). Since time is not an "essential element" of the crime, the amendment to the indictment did not affect a "substantial" alteration.

A habitual felon is "[a]ny person who has been convicted of or pled guilty to three felony offenses in any federal court or state court in the United States or combination thereof[.]" N.C. Gen. Stat. § 14-7.1 (2001). An indictment charging a person of having established habitual felon status is sufficient where it

> set[s] forth the date that prior felony offenses were committed, the name of the state or other sovereign against whom said felony offenses were committed, the dates that pleas of guilty were entered to or convictions returned in said felony offenses, and the identity of the court wherein said pleas or convictions took place.

N.C. Gen. Stat. § 14-7.3 (2001). The date of the felony offense accompanying the habitual felon indictment is not an essential element of establishing habitual felon status. Rather, N.C. Gen. Stat. § 14-7.3 requires, in relevant part, only the dates of the underlying felony convictions or pleas and the dates the underlying felonies were committed. Accordingly, neither amendment affected a "substantial" alteration, and this assignment of error is overruled.

Moreover, we note the change in the dates on the indictment did not affect defendant's planned defense. Following the State's motion to amend the indictments, the following exchange took place between defense counsel and the court:

> THE COURT: So you're moving to amend the bill of indictment instead of June 15th, 2001, show it January 30?
>
> [STATE]: 2001, yes, sir.
>
> THE COURT: What says the defendant?
>
> [DEFENSE COUNSEL]: Well, I was aware of that to begin with.
>
> THE COURT: So no objection?
>
> [DEFENSE COUNSEL]: I can't object to it.

THE COURT: All right, without any objections the motion is allowed.

In light of this exchange, it is difficult to conceive how defendant's planned defense was affected by the State's amendments.

II. Variance between the indictment and the proof offered at trial

[2] Defendant asserts the court committed plain error in entering judgment on the false pretense charge involving the driver's license because there was no direct evidence of how defendant came into possession of the driver's license. Specifically, defendant argues the State failed to prove he made a false representation as alleged in the indictment.

The indictment alleges "defendant represented his name to be Fred Alphonso Campbell, III . . . when, in fact, his name is Corrie Maurice May . . . ." At trial, the State called Officer Barefoot, who issued the duplicate license, and he testified, in relevant part, as follows:

Q. Officer Barefoot, did this defendant, Corrie Maurice May, represent to you that he in fact was the person whose license he was requesting a duplicate for?

A. He did.

Q. And it was based on that that you issued [the driver's license bearing the name Fred Alphonso Campbell, III]?

A. That's correct.

This testimony directly supports the indictment's allegation that defendant misrepresented both his identity and his name to Officer Barefoot in order to procure the driver's license issued to defendant's alias. This assignment of error is overruled.

III. Sufficiency of the evidence

[3] Defendant asserts the trial court committed plain error by allowing the false pretense charge involving the driver's license to go to the jury because the State failed to present evidence that defendant obtained the false license by any actual deception. Specifically, defendant contends Officer Barefoot admitted he did not recall defendant or having any conversation with him, and it is "feasible" that the license found on defendant came from some other source.

As illustrated above, Officer Barefoot did not testify as defendant contends in his brief. Instead, Officer Barefoot testified unequivocally that defendant came into the DMV, presented a defaced driver's license with the photograph missing and represented he was Fred Alphonso Campbell, III. Based upon defendant's representations, Officer Barefoot issued him a duplicate license. Furthermore, the trial transcript reveals Officer Barefoot remembered all the essential facts. On cross examination, he was unable to recall whether the conversation with defendant was limited solely to the subject of the driver's license and whether anyone accompanied defendant. Defense counsel's characterization of Officer Barefoot's testimony does not comport with the transcript; therefore, defendant's assignment of error is without merit and is overruled.

IV. Factual basis for defendant's no contest plea

[4] Defendant asserts the trial court committed plain error by failing to establish the prerequisite factual basis for the charge of obtaining property by false pretense involving tire rims before accepting defendant's plea of no contest in violation of N.C. Gen. Stat. § 15A-1022 (2001). A trial court may determine a factual basis for a plea exists based upon the following non-exclusive, statutory list:

(1) A statement of the facts by the prosecutor.

(2) A written statement of the defendant.

(3) An examination of the presentence report.

(4) Sworn testimony, which may include reliable hearsay.

(5) A statement of facts by the defense counsel.

N.C. Gen. Stat. § 15A-1022(c). The trial court "may accept the defendant's plea of no contest even though the defendant does not admit that he is in fact guilty if the judge is nevertheless satisfied that there is a factual basis for the plea." N.C. Gen. Stat. § 15A-1022(d) (2001).

In the instant case, the prosecutor for the State briefly recited the facts of the charged offense by stating to the court that defendant agreed to sell car rims to Bruce Thomas, took the money from Bruce Thomas, and failed to deliver the rims. Defendant's arguments that he ultimately repaid the money to Bruce Thomas or that this was simply an unfulfilled contract are unavailing in light of the fact that, directly

following the State's brief recital of the facts of the charged offense, defendant stipulated to the existence of a factual basis for his plea. Based on the facts presented by the State and the defendant's stipulation, the court properly determined a factual basis for the plea existed.

Defendant similarly asserts no factual basis was established for the no contest plea for the accompanying habitual felon indictment. However, habitual felon status had already been established using the same underlying offenses in the false pretense charge involving the driver's license, which defendant does not attack. Accordingly, the trial court properly determined a factual basis for the plea existed and entered a sentence of 80 to 105 months' imprisonment, which was to run concurrently with his first sentence.

Defendant contends, in the alternative, that the trial court erroneously failed to explain the consequences of a no contest plea. "The judge must advise the defendant that if he pleads no contest he will be treated as guilty whether or not he admits guilt." N.C. Gen. Stat. § 15A-1022(d) (2001). The court stated the following to defendant: "And do you understand that upon your plea of no contest you'll be treated as being guilty whether or not you admit you are in fact not guilty?" Defendant answered in the affirmative. Defendant further acknowledged under oath that he understood that by pleading no contest he was giving up his constitutional rights to a jury trial and to confront and cross-examine witnesses against him and that he considered it in his best interest to plead no contest. This exchange adequately tracks the language of the statute and sufficiently explains the consequences of defendant's no contest plea. Accordingly, this assignment of error is overruled.

No error.

Judges McGEE and TYSON concur.