STATE OF NORTH CAROLINA
v.
RENAI CHAPMAN HOLCOMBE.
No. COA09-147.
Court of Appeals of North Carolina.
Filed: August 4, 2009.
This case not for publication
Attorney General Roy Cooper, by Special Deputy Attorney General Elizabeth Leonard McKay, for the State.
Mercedes O. Chut, for defendant-appellant.
CALABRIA, Judge.
Renai Chapman Holcombe ("defendant") appeals a judgment entered upon a jury verdict finding her guilty of possession of cocaine, possession of drug paraphernalia, and attaining the status of an habitual felon. We find no error.
In the early morning hours of 25 November 2007, two officers with the Asheville Police Department ("the officers") were patrolling on foot an area in which arrests for prostitution and narcotics had been frequently made in the past. Defendant was walking in this same area with her hands in her pockets. The officers began to follow defendant to see if she might engage in any illegal activity. Upon hearing one of the officers behind her, defendant turned around and began moving her hands inside her pockets in a nervous manner. Because this was an area where people were known to carry pocket knives for protection, the officers asked defendant to remove her hands from her pockets to ensure she was unarmed. Defendant removed her hands from her pockets, but kept one of her fists closed. When defendant was asked to open her hand, she dropped what was later determined to be crack cocaine on the ground. The officers arrested defendant and performed a search incident to the arrest. The search produced several items of drug paraphernalia.
Defendant was tried in Buncombe County Superior Court on 19 August 2008 for the offenses of possession of cocaine, possession of drug paraphernalia, and attaining the status of an habitual felon. Defendant filed a motion to dismiss the habitual felon indictment, and the trial court denied the motion. The jury returned a verdict of guilty on all charges. Defendant was sentenced to a minimum term of 144 months to a maximum term of 182 months to be served in the North Carolina Department of Correction. Defendant appeals.

I. Ineffective Assistance of Counsel
Defendant first argues she received ineffective assistance of counsel because of her trial counsel's failure to move to suppress evidence. Defendant argues the officers did not have a constitutional basis to make an investigative stop and that any evidence collected as a result of that unlawful stop should have been objected to and suppressed at her trial.
"To prevail on a claim of ineffective assistance of counsel, a defendant must first show that his counsel's performance was deficient and then that counsel's deficient performance prejudiced his defense." State v. Allen, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (2006) (citing Strickland v. Washington, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693(1984)). "[T]o establish prejudice, a `defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Wiggins v. Smith, 539 U.S. 510, 534, 156 L. Ed. 2d 471, 493 (2003) (quoting Strickland, 466 U.S. at 694, 80 L. Ed. 2d at 698). In order to determine whether defendant received ineffective assistance of counsel, we must first determine whether defendant had a valid claim to suppress the evidence against her based upon an illegal search and seizure.
The Fourth Amendment protects the "right of the people . . . against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment is applicable to the states through the Due Process Clause of the Fourteenth Amendment. See State v. Watkins, 337 N.C. 437, 441, 446 S.E.2d 67, 69 (1994). Article I, Section 20 of the North Carolina Constitution provides similar protection against unreasonable seizures. N.C. Const. art. I, § 20; State v. Styles, 362 N.C. 412, 414, 665 S.E.2d 438, 439 (2008).
In Terry v. Ohio, 392 U.S. 1, 20 L. Ed. 2d 889 (1968), the United States Supreme Court set out the Fourth Amendment parameters under which it is permissible for officers to seize a person and subject him to a limited search absent probable cause for an arrest. Per Terry, "[o]ur first task is to establish at what point in this encounter the Fourth Amendment becomes relevant." Id. at 16, 20 L. Ed. 2d at 903. We must determine whether and when the officers "seized" defendant and whether and when they conducted a "search." Id. The Terry Court stated, "whenever a police officer accosts an individual and restrains his freedom to walk away, he has `seized' that person." Id.
Defendant was not "seized" under the parameters of the Fourth Amendment when the officers initially approached her. "No one is protected by the Constitution against the mere approach of police officers in a public place." State v. Brooks, 337 N.C. 132, 141, 446 S.E.2d 579, 585 (1994) (quoting State v. Streeter, 283 N.C. 203, 208, 195 S.E.2d 502, 506 (1973)). "A person is `seized' for Fourth Amendment purposes only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards." State v. Farmer, 333 N.C. 172, 187, 424 S.E.2d 120, 129 (1993). At no time did the officers order defendant to stop or make any efforts to detain her; the evidence indicates that after being startled by the officers behind her, defendant stopped on her own accord. The officers were still several feet away from defendant at this point. They made no show of force and did nothing else to indicate to a reasonable person in defendant's position that she was not free to leave or otherwise terminate the encounter. Therefore, defendant was not seized for purposes of the Fourth Amendment until she was arrested after discarding her contraband.
Even assuming, arguendo, that a Terry stop had been initiated once defendant became aware of the officers' presence, her nervous behavior was sufficient to cause them concern for their safety and justify the stop. It was apparent to the officers that defendant, based on her behavior, had something in her pocket. This was a high crime area where people were known to carry pocket knives for protection. This provided ample justification for a Terry frisk.
In Terry, the Supreme Court held that an officer may conduct a pat-down search to determine whether the person is in fact carrying a weapon. The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence.
State v. Beveridge, 112 N.C. App. 688, 693, 436 S.E.2d 912, 915 (1993). The officers never even conducted a Terry frisk, instead taking the far less invasive step of simply asking defendant to remove her hands from her pockets. When defendant did not fully comply with the officers' request by refusing to open one of her hands, the officers remained reasonably concerned for their safety when they ordered defendant to open that hand. Once defendant complied with the order, the abandonment of an illegal substance in plain view of the officers justified the subsequent detention, arrest, and search of defendant.
Since there were no violations of defendant's Fourth Amendment rights, the failure of her counsel to pursue these alleged violations cannot be considered a deficient performance that led to a prejudicial result. The first assignment of error is overruled.

II. Habitual Felon Indictment
Defendant next argues the trial court erred when it denied defendant's motion to dismiss the habitual felon indictment. Defendant argues the indictment was insufficient as a matter of law because it failed to allege defendant's date of birth or, alternatively, her age at the time of the predicate offenses.
N.C. Gen. Stat. § 14-7.1 defines an habitual felon as:
Any person who has been convicted of or pled guilty to three felony offenses in any federal court or state court in the United States or combination thereof. . . For the purposes of this Article, felonies committed before a person attains the age of 18 years shall not constitute more than one felony.
N.C. Gen. Stat. § 14-7.1 (2007). Defendant alleges that by this definition, the legislature intended the age of a defendant at the time of the predicate offenses to be an essential element of the crime of attaining the status of an habitual felon and therefore must be included in the indictment.
A valid bill of indictment is necessary for the trial court to have jurisdiction over a criminal defendant. State v. Burroughs, 147 N.C. App. 693, 695, 556 S.E.2d 339, 342 (2001)(citation omitted). An indictment is valid if it "state[s]the elements of the offense with sufficient detail to put the defendant on notice as to the nature of the crime charged and to bar subsequent prosecution for the same offense in violation of the prohibitions against double jeopardy." Id. at 695-96, 556 S.E.2d at 342 (citation omitted). The legislature has specifically enumerated the facts that must be included in an indictment charging a defendant with attaining the status of an habitual felon in N.C. Gen. Stat. § 14-7.3:
The indictment charging the defendant as an habitual felon shall be separate from the indictment charging him with the principal felony. An indictment which charges a person with being an habitual felon must set forth the date that prior felony offenses were committed, the name of the state or other sovereign against whom said felony offenses were committed, the dates that pleas of guilty were entered to or convictions returned in said felony offenses, and the identity of the court wherein said pleas or convictions took place.
N.C. Gen. Stat. § 14-7.3 (2007). Additionally, this Court has stated:
An indictment charging a person of having established habitual felon status is sufficient where it sets forth the date that prior felony offenses were committed, the name of the state or other sovereign against whom said felony offenses were committed, the dates that pleas of guilty were entered to or convictions returned in said felony offenses, and the identity of the court wherein said pleas or convictions took place.
State v. May, 159 N.C. App. 159, 163, 583 S.E.2d 302, 305 (2003). Contrary to the defendant's contention, the provisions of N.C. Gen. Stat. § 14-7.3 and this Court's interpretation of that statute govern the sufficiency of the indictment for attaining the status of an habitual felon, not those of N.C. Gen. Stat. § 14-7.1.
In the present case, the separate habitual felon indictment includes all of the elements outlined in N.C. Gen. Stat. § 14-7.3 for each of the predicate felonies on which the indictment is based. Therefore, this assignment of error is overruled.
The record on appeal includes an additional assignment of error not addressed by defendant in her brief to this Court. Pursuant to N.C.R. App. P. 28(b)(6) (2007), we deem it abandoned and need not address it.
No error.
Judges BRYANT and ELMORE concur.
Report per Rule 30(e).