An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-722
NORTH CAROLINA COURT OF APPEALS

Filed: 21 January 2014

STATE OF NORTH CAROLINA

v.                                    Wake County
                                      Nos. 12 CRS 204030, 005922
JOSEPH E. TUCKER


Appeal by defendant from judgment entered 18 October 2012 by Judge Paul G. Gessner in Wake County Superior Court. Heard in the Court of Appeals 8 October 2013.

>   *Attorney General Roy Cooper, by Special Deputy Attorney General Daniel S. Hirschman, for the State.*
>
>   *Parish & Cooke, by James R. Parish, for defendant appellant.*


McCULLOUGH, Judge.


Joseph E. Tucker ("defendant") appeals from his convictions for common law robbery, conspiracy to commit common law robbery, and attaining the status of an habitual felon. For the following reasons, we find no error.

## I. Background

This case arises as a result of a robbery at the King's Motel on South Wilmington Street in Raleigh during the early morning hours of 22 February 2012.

Prior to the robbery, Joseph Johnson ("co-defendant") and Bryan Rydzewski spent much of 21 February 2012 together in Raleigh panhandling, drinking alcohol, and getting high on crack cocaine. After splitting up from Rydzewski at some point during the day, co-defendant met back up with Rydzewski shortly after midnight on 22 February 2012. At that point, Rydzewski was joined by Tyrone Cox on a park bench. There co-defendant, Rydzewski, and Cox smoked crack cocaine for several minutes before deciding to get a motel room to get out of the cold.

The three men then walked to the King's Motel, where Cox rented a room. Within approximately an hour of arriving at the motel room, the three men finished smoking their crack cocaine and co-defendant left the motel room in search of more crack cocaine and girls. Co-defendant returned to the motel room alone approximately twenty minutes later.

Several minutes after co-defendant returned, there was a knock on the motel room door. Co-defendant opened the door and two men with hoods and bandanas covering their faces barged in. One of the men approached Cox, held a gun in Cox's face, and

demanded money. When Cox refused, the man struck Cox in the head with the gun and took his wallet. The two men then fled.

As Cox recovered and began to call the police, co-defendant indicated he wanted nothing to do with the situation and also left the motel room.

Officers from the Raleigh Police Department arrived within minutes. While patrolling the area around the King's Motel, Officer Lane noticed a black male in black clothing matching the description of the suspects walking down the street and stopped him. That man was later identified as co-defendant. As Officer Lane spoke with co-defendant, he noticed two additional suspects in dark clothing running north and radioed for backup. Responding officers arrived and detained the suspects and a female. The suspects were later identified as Mark Thompson and defendant.

Officers searching the area near where Thompson and defendant were detained recovered a wallet containing Cox's identification and a gun matching the description of that used in the robbery.

Shortly thereafter, the police brought Rydzewski to where defendant, co-defendant, and Thompson were detained. Rydzewski, from the back seat of a patrol car, then identified each suspect

as they were individually brought in front of the patrol car's headlights. At that time, defendant, co-defendant, and Thompson were arrested.

On 2 April 2012, defendant was indicted by a Wake County Grand Jury on two counts of robbery with a dangerous weapon and one count of conspiracy to commit robbery with a dangerous weapon. On 5 June 2012, defendant was additionally indicted for attaining the status of an habitual felon. Co-defendant and Thompson were indicted on similar charges for the King's Motel Robbery.

Subsequent to the indictments, Thompson entered a plea of guilty and agreed to testify against defendant and co-defendant. The State then filed a motion to join defendant's and co-defendant's cases for trial on 30 August 2012.

Defendant's and co-defendant's cases were called for trial in Wake County Superior Court on 15 October 2012, the Honorable Paul G. Gessner, Judge Presiding. Upon hearing arguments concerning the State's motion for joinder, the trial court joined defendant's and co-defendant's cases for trial over defendant's objection.

At trial, Thompson was called as a witness by the State and testified that he and defendant were out looking for someone to

rob when they bumped into co-defendant in the early morning hours of 22 February 2012. Thompson further testified that he, defendant, and co-defendant then devised the plan to rob Rydzewski and Cox in the motel room. Following the State's case, co-defendant took the stand in his own defense. Although co-defendant acknowledged that he bumped into Thompson and defendant while out searching for crack cocaine and girls, co-defendant denied any role in planning or committing the robbery. Co-defendant instead testified that he simply arranged to purchase crack cocaine from Thompson and defendant and informed them of the room where he, Rydzewski, and Cox were staying at the King's Motel. Defendant did not testify at trial.

Upon the close of all the evidence, defendant moved to dismiss the charges. The trial court allowed defendant's motion in part and denied it in part, dismissing the charges of robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon but allowing the case to proceed to the jury on charges of common law robbery and conspiracy to commit common law robbery.

On 18 October 2012, the jury returned verdicts finding defendant guilty of two counts of common law robbery and conspiracy to commit common law robbery. Defendant then entered

a guilty plea to attaining the status of an habitual felon. On 18 October 2012, the trial court entered judgment sentencing defendant to a term of 100 to 132 months imprisonment; a term within the presumptive range for a class C felony by a defendant with a prior record level IV. Defendant gave notice of appeal in open court.

## II. Discussion

Defendant raises the following four issues on appeal: whether (1) the trial court erred in joining his case with co-defendant's case for trial; (2) the trial court erred in denying his motion to suppress the pretrial show-up identification; (3) the trial court erred in sentencing him as an habitual felon; and (4) he received ineffective assistance of counsel. We address each issue in order.

### JOINDER

The first issue raised by defendant on appeal is whether the trial court erred in joining his case with co-defendant's case for trial. We hold the trial court did not err.

"The question of whether defendants should be tried jointly or separately is within the sound discretion of the trial judge, and the trial judge's ruling will not be disturbed on appeal absent a showing that joinder has deprived a defendant of a fair

trial." *State v. Evans*, 346 N.C. 221, 232, 485 S.E.2d 271, 277 (1997), *cert. denied*, *Gillis v. North Carolina*, 522 U.S. 1057, 139 L.Ed.2d 653 (1998).

In the present case, the trial court joined defendant's and co-defendant's cases for trial on the basis that both were charged with accountability for each offense. Not only is joinder permitted in such a case, *see* N.C. Gen. Stat. § 15A-926(b)(2)(a) (2011) (Permitting charges against two or more defendants to be joined for trial "when each of the defendants is charged with accountability for each offense[.]"), "[p]ublic policy supports consolidation of trials where defendants are alleged to be responsible for the same behavior." *State v. Tirado*, 358 N.C. 551, 564, 599 S.E.2d 515, 526 (2004) (citing *State v. Nelson*, 298 N.C. 573, 586, 260 S.E.2d 629, 639 (1979), *cert. denied*, 446 U.S. 929, 64 L.Ed.2d 282 (1980)).

Nevertheless, defendant contends he was denied a fair trial as a result of the joinder because his and co-defendant's defenses were completely antagonistic. Specifically, defendant denied involvement in the robbery and defended the case on the basis that there was insufficient evidence of his guilt. On the other hand, co-defendant acknowledged being present during the

robbery perpetrated by defendant and Thompson, but maintained he was merely an innocent victim.

As this Court has recognized,

> [t]he law is clear in stating that "the presence of antagonistic defenses does not, standing alone, warrant severance." *State v. Golphin*, 352 N.C. 364, 400, 533 S.E.2d 168, 195 (2000), *certs. denied*, 532 U.S. 931, 149 L.Ed.2d 305 (2001)). Rather, "'the test is whether the conflict in defendants' respective positions at trial is of such a nature that, considering all of the other evidence in the case, defendants were denied a fair trial.'" *State v. Lowery*, 318 N.C. 54, 59, 347 S.E.2d 729, 734 (1986) (citation omitted).
>
> In determining whether the antagonistic positions of the defendants were such that joinder amounted to prejudice, this Court must look to whether the trial court became an evidentiary battlefield "where the state simply stands by and witnesses 'a combat in which the defendants [attempt] to destroy each other.'" *State v. Nelson*, 298 N.C. 573, 587, 260 S.E.2d 629, 640 (1979) (citation omitted), *cert. denied*, 446 U.S. 929, 64 L.Ed.2d 282 (1980). In applying this test to facts, the courts have looked to whether the State relied on the codefendants' statements alone to prove their case or whether there was evidence independent of such statements. *Golphin*, 352 N.C. at 400-01, 533 S.E.2d at 195-96.

*State v. Love*, 177 N.C. App. 614, 621-22, 630 S.E.2d 234, 239-40 (2006) (alteration in original).

In this case, defendant points to co-defendants' identification of him as one of the perpetrators of the robbery

and argues co-defendant's testimony tipped the scales against him, resulting in an unfair trial. While we recognize co-defendant's testimony implicated defendant and was directly contradictory to defendant's defense, we hold defendant has not demonstrated prejudice warranting a new trial.

As we noted in *Love*, "[t]his is not a case where the State simply stood by and relied on the testimony of the respective defendants to convict them. The State itself offered plenary evidence of . . . defendants' guilt." 177 N.C. App. at 622, 630 S.E.2d at 240. This evidence included testimony from Thompson describing defendant's role in planning and executing the robbery, an out-of-court identification of defendant by Rydzewski shortly after the robbery, and other circumstantial evidence of defendant's guilt. Moreover, defendant's and co-defendant's antagonistic defenses were not so irreconcilable that the jury would unjustifiably infer both were guilty. *See State v. Nelson*, 298 N.C. 573, 587, 260 S.E.2d 629, 640 (1979) ("Prejudice would ordinarily result where codefendants' defenses are so irreconcilable that 'the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.'"

(quoting *Rhone v. United States*, 365 F.2d 980, 981 (D.C. Cir. 1966)).[1]

Given the State's substantial plenary evidence against defendant, we hold the joinder of the cases did not amount to prejudice resulting in an unfair trial. Thus, the trial court did not abuse its discretion.

## PRETRIAL IDENTIFICATION

Defendant next argues that the trial court erred in denying his motion to suppress evidence of Rydzewski's pretrial identification. We disagree.

"Due process forbids an out-of-court confrontation which is so unnecessarily 'suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *State v. Leggett*, 305 N.C. 213, 220, 287 S.E.2d 832, 837 (1982) (quoting *Simmons v. United States*, 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 1253 (1968)). "If an out-of-court identification procedure is so suggestive that it leads to a substantial likelihood of misidentification, the out-of-court identification is inadmissible." *State v. Oliver*, 302 N.C. 28, 45, 274 S.E.2d 183, 194-95 (1981).

---

[1] We further note that defendant had the opportunity to cross-examine co-defendant at trial and co-defendant's testimony would be admissible in a separate trial for defendant.

> Our courts apply "a two-step process for determining whether an identification procedure was so suggestive as to create a substantial likelihood of irreparable misidentification." *State v. Marsh*, 187 N.C. App. 235, 239, 652 S.E.2d 744, 746 (2007), *overruled on other grounds by State v. Tanner*, 364 N.C. 229, 695 S.E.2d 97 (2010). "'First, the Court must determine whether the identification procedures were impermissibly suggestive. Second, if the procedures were impermissibly suggestive, the Court must then determine whether the procedures created a substantial likelihood of irreparable misidentification.'" *Id.* (quoting *State v. Fowler*, 353 N.C. 599, 617, 548 S.E.2d 684, 698 (2001), *cert. denied*, 535 U.S. 939, 152 L. Ed. 2d 230 (2002)). Even though they may be "suggestive and unnecessary," showups "are not *per se* violative of a defendant's due process rights." *State v. Turner*, 305 N.C. 356, 364, 289 S.E.2d 368, 373 (1982).

*State v. Rawls*, 207 N.C. App. 415, 423, 700 S.E.2d 112, 118 (2010).

Addressing the first step in the analysis, we note "[s]how-ups, the practice of showing suspects singly to witnesses for purposes of identification, have been criticized as an identification procedure by both [the N.C. Supreme Court] and the U.S. Supreme Court." *Turner*, 305 N.C. at 364, 289 S.E.2d at 373 (citing *Stovall v. Denno*, 388 U.S. 293, 18 L. Ed. 2d 1199 (1967); *Oliver*, 302 N.C. 28, 274 S.E.2d 183). This is because a show-up "may be inherently suggestive for the reason that witnesses would be likely to assume that the police presented

for their view persons who were suspected of being guilty of the offense under investigation." *Id.*

In the present case, Rydzewski was informed by officers that they had found possible suspects and was taken by patrol car to where defendant, co-defendant, and Thompson were detained. From the back seat of the patrol car, Rydzewski then identified each individual as they were brought in front of the patrol car lights one at a time.

As we have held in cases addressing similar show-up identifications, *see Rawls*, 207 N.C. App. at 423-24, 700 S.E.2d at 118, we hold the show-up style identification in this case was impermissibly suggestive. Nevertheless, we do not find a substantial likelihood of misidentification.

"An unnecessarily suggestive show-up identification does not create a substantial likelihood of misidentification where under the totality of the circumstance surrounding the crime, the identification possesses sufficient aspects of reliability." *Turner*, 305 N.C. at 364, 289 S.E.2d at 373.

> The factors to be considered in evaluating the likelihood of irreparable misidentification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty

demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

*State v. Grimes*, 309 N.C. 606, 609-10, 308 S.E.2d 293, 294-95 (1983). "'Against these factors is to be weighed the corrupting effect of the suggestive identification itself.'" *Turner*, 305 N.C. at 365, 289 S.E.2d at 374 (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114, 53 L. Ed. 2d 140, 154 (1977)).

It is clear the trial court considered the five factors when ruling on defendant's motion to suppress as the trial court specifically stated:

> Based upon the totality of the -- all the evidence that's been presented on this issue, I'm going to, in my discretion, allow his testimony regarding the showup identification, specifically he was able to identify the jacket, the height, the weight, the differences in weight between the two subjects, and by that I mean the two subjects that are in addition to Mr. Johnson. The proximity in time, the proximity of the showup and the crime scene, it's a very close distance. He did have an opportunity to view the criminals at the time of the crime. The degree of attention that he had, arguably he had been drinking and smoking crack, but there is, as he testified, he was aware of it and this was a major event. I think I've touched on the other factors set forth in the brief, but the level of certainty demonstrated by him at the time of the confrontation would show up -- would indicate unequivocally that it was the same people, so in my discretion I am going to allow his testimony regarding the showup identification.

Nevertheless, defendant now attacks the reliability of Rydzewski's identification by arguing Rydzewski was impaired by drugs and alcohol at the time of the robbery, had limited opportunity to observe the perpetrators, and could only give general descriptions as to perpetrators' clothing, height, and weight. We are unpersuaded by defendant's arguments.

Upon our own review of the *voir dire* testimony, we are in agreement with the trial court's analysis of the five factors above. Despite the suggestive nature of the show-up identification, the identification possessed sufficient aspects of reliability so that there was not a substantial likelihood of irreparable misidentification. Therefore, the trial court did not err in denying defendant's motion to suppress.

### HABITUAL FELON STATUS

In defendant's third and fourth issues on appeal, defendant challenges his status as an habitual felon based on a variance between the allegations in his habitual felon indictment and the proof offered by the State. We address these issues together.

At the outset, we recognize that there is a variance between the allegations in the indictment and the proof. The first of the three felony convictions listed on defendant's habitual felon indictment provides: "On June 1, 2010 . . . .

defendant did commit the felony of Breaking and Entering and thereafter pled guilty and judgment was entered on June 23, 2010, in Wake County District Court file number 10 CR 213205." The State's evidence supporting defendant's status as an habitual felon, however, includes judgments from file numbers 11 CRS 217351, 10 CR 224208, and 10 CR 213203.

Having plead guilty to attaining the status of an habitual felon, defendant recognizes he waived any issue regarding the variance.

> As this Court held in *State v. Baldwin*, 117 N.C. App. 713, 717, 453 S.E.2d 193, 195, *cert. denied*, 341 N.C. 653, 462 S.E.2d 518 (1995), when considering the defendant's contention that a habitual felon indictment contained incorrect information regarding one of his felony convictions, "[t]he issue of variance between the indictment and proof is properly raised by a motion to dismiss." When a defendant fails to raise the issue at trial, he waives his right to appeal that issue. *Id.* (declining to address the issue because defendant moved to dismiss on double jeopardy rather than variance grounds).
>
> By pleading guilty, defendant thus waived his right to challenge the indictment on the ground that the information in the indictment was incorrect. *See State v. Braxton*, 352 N.C. 158, 173, 531 S.E.2d 428, 437 (2000) ("A defendant waives an attack on an indictment when the validity of the indictment is not challenged in the trial court."), *cert. denied*, 531 U.S. 1130, 148 L. Ed. 2d 797 (2001). We also note that defendant's counsel stipulated to the

> convictions set out in the indictment,
> resulting in no fatal variance. *Baldwin*,
> 117 N.C. App. at 716, 453 S.E.2d at 194
> ("[N]o fatal variance was shown between the
> indictment and proof at trial since
> defendant's counsel stipulated to the
> previous convictions as set out in the
> indictment.").

*State v. McGee*, 175 N.C. App. 586, 588-89, 623 S.E.2d 782, 784 (2006).

Yet, recognizing he can no longer raise the variance between the indictment and proof as an issue on appeal, defendant now asserts that he was denied the effective assistance of counsel. Specifically, defendant argues his counsel should have moved to dismiss the habitual felon charge instead of pleading guilty.

> To prevail on a claim of ineffective
> assistance of counsel, a defendant must
> first show that his counsel's performance
> was deficient and then that counsel's
> deficient performance prejudiced his
> defense. Deficient performance may be
> established by showing that counsel's
> representation fell below an objective
> standard of reasonableness. Generally, to
> establish prejudice, a defendant must show
> that there is a reasonable probability that,
> but for counsel's unprofessional errors, the
> result of the proceeding would have been
> different. A reasonable probability is a
> probability sufficient to undermine
> confidence in the outcome.

*State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (citations and quotation marks omitted), *cert. denied*, 549 U.S. 867, 166 L. Ed. 2d 116 (2006).

Although we acknowledge the variance between the indictment and proof, we hesitate to hold trial counsel's failure to move for dismissal constitutes deficient performance where the record reveals the plea to attaining the status of an habitual felon was part of a larger agreement whereby the State would not proceed on two aggravating factors and would dismiss charges against defendant for failure to report as a sex offender and habitual felon status related to that offense. Nevertheless, assuming arguendo that trial counsel's performance was deficient, defendant was not prejudiced. Although there is a variance between the indictment and the proof, it appears from the record that defendant's conviction in case number 10 CR 213203 was for the same offense alleged in the indictment. In fact, comparing the habitual felon indictment and the judgment in case number 10 CR 213203 reveals that the two match in all respects except for the last digit in the file number.[2] Thus, the error appears to be merely clerical.

---

[2]What is more, it appears from the last page of the judgment in case number 10 CR 213203 that defendant was charged with felony breaking and entering in case number 10 CR 213203 for an offense

It is likely that if defendant had moved to dismiss based on the variance, the State could have moved to amend the indictment.

While N.C. Gen. Stat. § 15A-923(e) (2011) provides "[a] bill of indictment may not be amended[,]" our appellate courts have long interpreted the term "amendment" to mean "any change in the indictment which would substantially alter the charge set forth in the indictment." *State v. Carrington*, 35 N.C. App. 53, 58, 240 S.E.2d 475, 478, *disc. review denied and appeal dismissed*, 294 N.C. 737, 244 S.E.2d 155 (1978); *see also State v. Price*, 310 N.C. 596, 598, 313 S.E.2d 556, 558 (1984). We hold the amendment of the file number in this case would not have substantially altered the indictment. Moreover, it is clear from defendant's plea that he understood the charges against him and did not dispute the prior conviction for breaking and entering.

### III. Conclusion

For the reasons discussed above, we find no error and hold defendant received effective assistance of counsel.

No error.

Judges McGee and DILLON concur.

---

committed on 1 June 2010. Yet, there is no record of a conviction.

Report per Rule 30(e).