STATE OF NORTH CAROLINA v. SAM C. HUGHES, Defendant

No. 9429SC545

(Filed 18 April 1995)

**Indictment, Information, and Criminal Pleadings § 40 (NCI4th)— embezzlement—amendment of indictment— change of owner from individual to corporation**

Where the indictments alleged that defendant embezzled gasoline "belonging to Mike Frost, President of Petroleum World, Incorporated, a North Carolina corporation," the trial court erred by permitting the State to amend the indictments at the close of its evidence by deleting "Mike Frost, President" from each of the indictments and thus to change ownership from an individual to a corporation, since this was a substantial alteration of the indictment prohibited by N.C.G.S. § 15A-923(e).

**Am Jur 2d, Indictments and Informations §§ 188 et seq.**

**Power of court to make or permit amendment of indictment with respect to allegations as to name, status, or description of persons or organizations. 14 ALR3d 1358.**

**Power of court to make or permit amendment of indictment with respect to allegations as to property, objects, or instruments, other than money. 15 ALR3d 1357.**

Appeal by defendant from judgment entered 2 February 1994 by Judge Paul M. Wright in Polk County Superior Court. Heard in the Court of Appeals 21 February 1995.

Defendant was convicted on three counts of embezzlement, a violation of G.S. 14-90, and sentenced to 9 years imprisonment, suspended on the condition that defendant serve 5 years supervised probation and pay $18,260.92 in restitution. At trial, the State's evidence tended to show the following: Defendant was the operator of a convenience store known as Sam's Minimart. Defendant dispensed gasoline from six pumps outside the store. The gasoline was supplied

by Petroleum World, Inc., who also owned the tanks and pumps. Each week a representative from Petroleum World would come to Sam's Minimart, read the gasoline meter to determine how many gallons of gasoline had been sold that week and based on that information would then prepare an invoice. Defendant would then give a check to the representative in the amount of the invoice as payment for the gasoline that had been sold that week. The representative would then set the unit price for the gasoline to be sold the following week. Defendant was responsible for paying only for the gas that he actually sold.

In October 1990, Petroleum World received at least two bad checks from defendant. After these checks were returned, Petroleum World padlocked defendant's pumps. Defendant, however, removed the padlocks and obtained gasoline from another supplier. When defendant paid for those checks and agreed not to pay Petroleum World in the future with bad checks, Petroleum World resumed supplying defendant with gasoline.

On 8 March 1991, defendant's check dated 1 March 1991 for $6,262.61 for gas sales based on the 1 March meter reading was returned for insufficient funds. Defendant's check for $5,780.66 dated 8 March for gasoline sold between 1 and 8 March was also returned unpaid. Defendant testified that when he gave Petroleum World's representative the 1 March check, he told the representative that the check would be good in a couple of days.

On 25 March, defendant called Petroleum World's manager, John Thornton, to refill the tanks. Thornton said that defendant would have to pay cash for the gasoline sold between 15 and 22 March and that the two previous bad checks dated 1 and 8 March had to be paid by 29 March. Defendant agreed and on 25 March sent a cashier's check to Petroleum World for the amount due for the 22 March meter reading. Petroleum World delivered the gas to defendant that day. On 26 March, defendant's check dated 15 March (for gas sold between 8 and 15 March) was returned for insufficient funds. On 27 March, Petroleum World sent a tanker to remove its gasoline and its pumps. Defendant was out of town and did not notice this until he returned on 29 March. Defendant never paid Petroleum World for the gasoline covered by the 1, 8 and 15 March meter readings.

Defendant presented evidence. Defendant testified that he did not have enough money in the bank to cover the checks that were returned in March. Defendant testified that he encountered financial

difficulty due to the fact that "some of [my] monies disappeared." Defendant appeals.

*Attorney General Michael F. Easley, by Assistant Attorney General Emmett B. Haywood, for the State.*

*Roberts Stevens & Cogburn, P.A., by Max O. Cogburn, for defendant-appellant.*

EAGLES, Judge.

Defendant contends that the trial court erred in allowing the State to amend the bills of indictment and in denying defendant's motion to dismiss. After careful review of the record and briefs, we vacate the judgment.

I.

On 27 January 1992, defendant was indicted on three counts of embezzlement. G.S. 14-90. The bills of indictment charged that defendant embezzled gasoline "belonging to Mike Frost, President of Petroleum World, Incorporated, a North Carolina Corporation having it's [sic] principal place of business in Cliffside, North Carolina." The indictments further stated that defendant "was over 16 years of age and was the consignee of said Petroleum World, Incorporated, a North Carolina Corporation."

At the close of the State's evidence, defendant made a motion pursuant to G.S. 15A-1227 to dismiss for insufficiency of the evidence. Defendant argued that the indictments alleged that the gasoline belonged to Mike Frost. The State's evidence, however, tended to show that the gasoline was actually owned by Petroleum World, Incorporated, a corporation. After the State rested, defendant moved to dismiss based upon a fatal variance. Since the identity of the owner is an essential element of the charge of embezzlement, defendant argued that there was a fatal variance between the indictments as charged and the State's evidence as presented in court. Following an overnight recess, the State moved to amend the indictments by deleting the words "Mike Frost, President" from each of the indictments. The trial court allowed the State's motion to amend. Defendant contends that the trial court erred in allowing the State to amend the indictments. We agree.

An indictment is invalid if it does not allege all of the essential elements of the offense. *State v. Johnson,* 77 N.C. App. 583, 584, 335,

S.E.2d 770, 771 (1985). An indictment for embezzlement must allege ownership of the property in a person, corporation or other legal entity able to own property. *State v. Ellis,* 33 N.C. App. 667, 669, 236 S.E.2d 299, 301 (1977). When proof of ownership at trial varies from the allegation of ownership in the indictment, the indictment is invalid. *State v. Brown,* 263 N.C. 786, 140 S.E.2d 413 (1965); *State v. Stinson,* 263 N.C. 283, 139 S.E.2d 558 (1965); *State v. Vawter,* 33 N.C. App. 131, 136, 234 S.E.2d 438, 441 (1977).

In *State v. Brown, supra,* defendant was charged in an indictment of breaking and entering a building occupied by "Stroup Sheet Metal Works, H.B. Stroup, Jr., owner," with intent to steal. The State's proof at trial, however, showed that the building was occupied by "Stroup Sheet Metal Works, Inc.," and there was no evidence that "H.B. Stroup, Jr.," was the owner of Stroup Sheet Metal Works. Our Supreme Court held that there was a fatal variance between the indictment and proof and vacated the judgment. An indictment may not be amended. G.S. 15A-923(e). An "amendment" is defined to be "any change in the indictment which would substantially alter the charge set forth in the indictment." *State v. Price,* 310 N.C. 596, 598, 313 S.E.2d 556, 558 (1984) (quoting *State v. Carrington,* 35 N.C. App. 53, 58, 240 S.E.2d 475, 478 (1978)). Here, the trial court deleted the words, "Mike Frost, President" from the indictments to change ownership from Mike Frost, an individual to Petroleum World, Inc., a corporation. This is a substantial alteration of the indictment prohibited by G.S. 15A-923(e). Accordingly, we vacate the trial court's judgment.

Vacated.

Judges WALKER and McGEE concur.