STATE OF NORTH CAROLINA v. SHAWN KRISTOPHER HOLLIMAN

No. COA02-133

(Filed 31 December 2002)

### 1. Appeal and Error—preservation of issues—different theory on appeal

Although defendant contends the trial court erred in a first-degree murder case by denying defendant's motion to suppress his statement provided to police based on lack of probable cause to effectuate his seizure, this assignment of error was waived because defendant impermissibly presented a different theory on appeal than argued at trial.

### 2. Homicide—first-degree murder—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the charge of first-degree murder because the jury could infer from the evidence the elements of malice, intent, premeditation, and deliberation when: (1) defendant and the victim were not in agreement about the victim giving birth to a child; (2) the victim was expecting defendant to visit her on the night of her murder; (3) defendant drove with a friend to the victim's apartment complex, defendant walked toward the victim's apartment, and defendant returned to the car with a tear in his eye; and (4) the victim's body was found with two gunshot wounds to the back of her head.

### 3. Indictment and Information— amendment—spelling of victim's name

The trial court did not err in a first-degree murder case by allowing the State to amend the indictment to change the spelling of the name of the victim from "Tamika" to "Tanika," because: (1) the change in the indictment did not substantially alter the charge set forth in the indictment; and (2) the indictment sufficiently served the purpose of placing defendant on notice of the charge in order for him to prepare a defense.

### 4. Evidence—hearsay—testifying to substance of same evidence

The trial court did not err in a first-degree murder case by admitting hearsay evidence that defendant was the father of the victim's unborn child and that the victim was expecting a visit from defendant the night she was killed, because defendant later

testified to the substance of the same evidence without objection, thereby losing the benefit of his earlier objection.

### 5. Evidence—witness's written statement—incompetent corroborative testimony

Assuming arguendo that the trial court erred in a non-capital first-degree murder case by admitting into evidence a witness's written statement based on the fact that it did not corroborate the witness's trial testimony, the error was not prejudicial because: (1) defendant failed to object to the allegedly incompetent corroborative testimony at trial; and (2) defendant has not shown a reasonable possibility that without the statement the jury would have reached a different verdict given the other evidence including defendant's written confession.

Appeal by defendant from judgment entered 13 July 2001 by Judge Catherine C. Eagles in Guilford County Superior Court. Heard in the Court of Appeals 13 November 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Thomas O. Lawton, III, for the State.*

*Parish & Cooke, by James R. Parish, for defendant appellant.*

TIMMONS-GOODSON, Judge.

Shawn Kristopher Holliman ("defendant") appeals from his conviction of first-degree murder. For the reasons discussed herein, we find no error by the trial court.

The State's evidence at trial tended to show the following: On 14 December 1999, Natalie Ann Fox ("Fox") returned to her apartment on Sykes Avenue which she shared with her seventeen-year-old daughter, Tanika Fox ("Tanika"). Upon arriving at her apartment, Fox found Tanika lying on the floor and called an emergency response unit. Officers from the Greensboro Police Department and paramedics responded to the call. Tanika was taken to Moses Cone Hospital where she was pronounced dead by Dr. Allen Davidson ("Dr. Davidson"). Tanika had suffered two gunshot wounds to the back of the head. Fox provided the following testimony: that she and Tanika shared the apartment; that she telephoned Tanika three times on the evening of 14 December 1999 and spoke to her by telephone twice; that Fox last placed a telephone call to Tanika at approximately 9:30 p.m. during her break at work,

but Tanika did not answer the phone; and that Tanika was pregnant at the time she was killed.

On 15 December 1999, Detective R.W. Saul ("Detective Saul") learned that defendant was possibly the father of Tanika's unborn child. Detective Saul also learned that the pregnancy caused some problems between Tanika and defendant, because he did not want Tanika to have the baby. Upon learning this information, Detective Saul visited defendant's home to interview him about Tanika's death. Defendant accompanied Detective Saul to the police station for the interview. Defendant informed Detective Saul and later testified at trial that on 14 December 1999, he worked from noon until 9:00 p.m.; returned to his mother's home; visited the home of Ricky Jones ("Jones"); drove to Goldsboro with a friend by the name of "Carlos;" and then returned to his mother's home in Greensboro. "Carlos" did not testify at trial.

On 18 January 2000, the police interviewed Jones, who provided a written statement. According to information tendered by Jones, defendant drove to his house on 14 December 1999; the two men left the house and drove to an apartment where defendant previously resided; and after entering the apartment and remaining for some period of time, defendant and Jones then drove to a parking lot on Sykes Avenue. Jones testified that he remained in the car while defendant walked across a parking lot toward an apartment complex. According to Jones, defendant returned to the car "five minutes later" with a "tear in [his] eye." According to Jones, he learned of Tanika's death on 15 December 1999.

As a result of the interview with Jones, Detective Saul conducted a second interview with defendant on 18 January 2000. Defendant was shown a picture of Tanika and was confronted with the statement given by Jones. Defendant then confessed to killing Tanika and provided a written statement detailing the events. On 21 February 2000, defendant was indicted for the first-degree murder of "Tamika R. Fox." On 9 July 2001, the State moved to amend the indictment to read "Tanika," as the previous indictment misspelled her first name. The trial court granted the motion to amend.

At trial, defendant denied involvement with Tanika's death. Defendant testified that he and Tanika had a sexual relationship; and that when he learned that she was pregnant, he discussed with her the abortion option, but she rejected the idea and was determined to have the baby. Defendant denied visiting Tanika on 14 December

1999. Tameka Harris ("Harris") and Christina Potts ("Potts") testified that on 14 December 1999 each spoke with Tanika over the telephone and she informed them that she was expecting a visit from defendant.

Upon conclusion of the evidence, the jury found defendant guilty of first-degree murder. Defendant was sentenced to a term of life imprisonment. Defendant appeals.

---

Defendant presents five assignments of error on appeal, arguing that the trial court erred by (1) denying his motion to suppress his statement; (2) denying his motion to dismiss the charge of first-degree murder; (3) allowing the State to amend the indictment before trial; (4) allowing impermissible hearsay testimony; and (5) allowing the admission of Jones' written statement.

[1] In his first assignment of error, defendant argues that the trial court erred by denying his motion to suppress his statement provided to police. Defendant asserts that his statement was inadmissible because his Fourth Amendment right to be free from unreasonable seizures was violated and there was no probable cause for his seizure. For the reasons stated herein, defendant has waived this assignment of error.

Our Supreme Court "has long held that where a theory argued on appeal was not raised before the trial court, 'the law does not permit parties to swap horses between courts in order to get a better mount' " in the appellate courts. *State v. Sharpe,* 344 N.C. 190, 194, 473 S.E.2d 3, 5-6 (1996) (quoting *Weil v. Herring,* 207 N.C. 6, 10, 175 S.E. 836, 838 (1934)); *see also State v. Benson,* 323 N.C. 318, 321-22, 372 S.E.2d 517, 519 (1988) (holding that where defendant relied on one theory at trial as basis for written motion to suppress and then asserted another theory on appeal, "no swapping horses" rule applied); *State v. Hunter,* 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982). According to Rule of Appellate Procedure 10(b)(1), in order to preserve a question for appellate review, the party must state the specific grounds for the ruling the party desires the court to make. N.C.R. App. P. 10(b)(1) (2002). "The defendant may not change his position from that taken at trial to obtain a 'steadier mount' on appeal." *State v. Woodard,* 102 N.C. App. 687, 696, 404 S.E.2d 6, 11 (1991) (quoting *State v. Benson,* 323 N.C. 318, 322, 372 S.E.2d 517, 519 (1988)), *disc. review denied,* 329 N.C. 504, 407 S.E.2d 550 (1991).

In the instant case, the motion to suppress was heard in the trial court and defense counsel stated the following:

. . . our allegation [is] that Dectective Saul at some point coerced [defendant's] confession. And frankly, Judge Eagles, that's the only legal basis that I can see in this case for suppressing the confession.

. . . .

. . . Of course, the problem is from the standpoint of Miranda. He was Mirandized. And he did sign the Miranda waiver form. So we can't argue that it was an un-Mirandized statement. We're not arguing that. We're arguing that it was coerced.

At trial, defendant argued that the statement should be suppressed, because it was coerced. For the first time on appeal, defendant asserts that the statement should be suppressed for lack of probable cause to effectuate his seizure. Because defendant impermissibly presents a different theory on appeal than argued at trial, this assignment of error was not properly preserved. Therefore, it is waived by defendant.

[2] By his second assignment of error, defendant argues that the trial court erred in denying his motion to dismiss the charge of first-degree murder due to the insufficiency of evidence. In this assignment of error, defendant argues that the State's evidence was only sufficient for a charge of second-degree murder. We disagree.

In considering a motion to dismiss, the trial court must examine the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference that may be drawn from the evidence. *State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992). "A motion to dismiss on the ground of insufficient evidence should be denied if there is substantial evidence of each element of the crime, and that defendant [is] the perpetrator." *State v. Cozart*, 131 N.C. App. 199, 202, 505 S.E.2d 906, 909 (1998), *disc. review denied*, 350 N.C. 311, 534 S.E.2d 600 (1999); *State v. Roddey*, 110 N.C. App. 810, 812, 431 S.E.2d 245, 247 (1993). Evidence is substantial when a jury "could find the fact to be proved beyond a reasonable doubt." *State v. Sumpter*, 318 N.C. 102, 108, 347 S.E.2d 396, 399 (1986). "The substantial evidence test requires a determination that there is substantial evidence (1) of each essential element of the offense charged, and (2) that defendant is the perpetrator of the offense." *State v. Jones*, 110 N.C. App. 169, 177, 429 S.E.2d 597, 602 (1993), *disc. review denied*, 336 N.C. 612, 447 S.E.2d 407 (1994).

"Murder in the first-degree is the unlawful killing of a human being with malice and with premeditation and deliberation." *State v. Russell Council Judge*, 308 N.C. 658, 661, 303 S.E.2d 817, 820 (1983). " 'Premeditation means that the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation.' " *Cozart*, 131 N.C. App. at 199, 505 S.E.2d at 909 (quoting *State v. Conner*, 335 N.C. 618, 635, 440 S.E.2d 826, 835-36 (1994)). " 'Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation.' " *Id.*

In defendant's written statement he gave the following information:

I got off work a little before 9:00. Went home. Talked to my mother. Went to Cameron Avenue. Left. Went to Tanika's house. Asked her why are you putting me through this. How can I provide [for] three kids and I'm barely providing for two. Then I asked [Tanika] why do you want to have a baby by me anyway. And she said to make up for the last one. It seemed to be a way to get at me. So I lashed out and got a cold chill. And the next thing I know I pulled the gun out [and] shot. Then I ran with nothing but the sound of a gun in my mind.

Viewing the evidence in the light most favorable to the State, the jury could properly infer the elements of malice, intent, premeditation and deliberation from the evidence. The evidence tended to show that defendant and Tanika were not in agreement about her giving birth to a child and that Tanika was expecting defendant to visit her on the night of her murder. Further evidence showed that defendant and Jones drove to Tanika's apartment complex, defendant walked toward Tanika's apartment, and returned to the car "with a tear in his eye." Tanika's body was found with two gunshot wounds to the back of her head. We hold that there was substantial evidence from which a jury could find that defendant committed first-degree murder. Therefore, defendant's motion to dismiss was properly denied.

[3] In defendant's next assignment of error, he argues that the trial court erred in allowing the State to amend the indictment. We disagree.

The North Carolina General Statutes provide that an indictment may not be amended. N.C. Gen. Stat. § 15A-923(e) (2001). An amend-

ment to an indictment is " 'any change in the indictment which would substantially alter the charge set forth in the indictment.' " *State v. Hughes*, 118 N.C. App. 573, 576, 455 S.E.2d 912, 914 (1995) (quoting *State v. Price*, 310 N.C. 596, 598, 313 S.E.2d 556, 558 (1984)); *see also State v. Carrington*, 35 N.C. App. 53, 58, 240 S.E.2d 475, 478 (1978). The change in an indictment is scrutinized because, it is important that the defendant understand the charge in an indictment in order to defend himself against the allegation. *State v. Sisk*, 123 N.C. App. 361, 366, 473 S.E.2d 348, 352 (1996). Generally it is " 'true tha[t] an indictment need only allege the ultimate facts constituting the elements of the criminal offense.' " *State v. Thomas*, 153 N.C. App. 326, 570 S.E.2d 142, 147 (2002) (quoting *State v. Youngs*, 141 N.C. App. 220, 230, 540 S.E.2d 794, 801 (2000)). "The elements need only be alleged to the extent that the indictment (1) identifies the offense; (2) protects against double jeopardy; (3) enables the defendant to prepare for trial; and (4) supports a judgment on conviction." *Thomas*, 153 N.C. App. at 335, 570 S.E.2d at 147.

Defendant appears to rely on *State v. Bailey*, 97 N.C. App. 472, 389 S.E.2d 131 (1990), to further his argument against amending his indictment. This reliance is misplaced in that the *Bailey* Court held that where the defendant was neither misled nor surprised as to the nature of the charges, a change to the indictment of a surname is not an amendment within the meaning of N.C. Gen. Stat. § 15A-923(e). *Id.* at 476, 389 S.E.2d at 133; *see also State v. Marshall*, 92 N.C. App. 398, 401, 374 S.E.2d 874, 876 (1988) (holding that where the indictment inadvertently omitted the victim's last name, the defendant was neither misled nor surprised as to the nature of the charges and the change did not constitute an amendment). In *Bailey*, our Court affirmed the trial court's correction of indictments to properly reflect the name of the victim where the first and last name were originally reversed. *Id.*

In the present case, the name of the alleged victim set out on the original indictment was "Tamika." Prior to trial, the State moved to change the name to "Tanika." Defendant is misdirected in arguing that the amendment was fatal, as the change in the indictment did not substantially alter the charge set forth in the indictment. The evidence tended to show that defendant had a sexual relationship with "Tanika" and that Tanika was carrying defendant's unborn child. The evidence further showed that Tanika was murdered on 14 December 1999, and that defendant was being accused of her murder. The indictment sufficiently served the purpose of placing

defendant on notice of the charge in order for him to prepare a defense. We find no error.

**[4]** In his fourth and fifth assignments of error, defendant argues that the trial court erred by admitting hearsay evidence. At trial, Fox testified that defendant was the father of Tanika's unborn child. Harris and Potts testified that each spoke with Tanika on the night she was killed, and she informed them that she was expecting a visit from defendant. Defendant contends that the testimony from Fox, Harris and Potts was error. We disagree.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. N.C. Gen. Stat. § 8C-1, Rule 801(c) (2001). "Where evidence is admitted over objection and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost." *State v. Alford*, 339 N.C. 562, 570, 453 S.E.2d 512, 516 (1995).

On cross-examination and without objection, defendant gave the following testimony:

. . . .

Q: But in any event, the baby that [Tanika] was pregnant with in December of 1999, it's your understanding that was your child; is that right?

A: Yes. I knew it was a good possibility.

. . . .

Q: Well, you heard the testimony [Tanika] expected you to come over there on Tuesday night, didn't you?

A: Yes, I did.

Q: Two different witnesses?

A: Uh-huh.

Q: Do you know either one of those women?

A: Yes.

Q: Miss Harris?

A: Yes.

Q: Miss Potts?

A: Uh-huh.

. . . .

Q: You don't have any idea how they would have gotten the thought in their head that Tanika thought you were coming over there that night?

A: I have an idea. You know. I told Tanika that I might come over there.

The testimony given by Fox, Harris and Potts at issue here, was admitted over defendant's objection; however, as indicated by the above-noted passage, defendant later testified to the substance of the same evidence without objection. Defendant stated that he knew that Tanika was possibly carrying his child and that he told Tanika he "might" visit her on the night of her death. In so doing, defendant lost the benefit of his earlier objection. Therefore, we find no error.

[5] In his last assignment of error, defendant contends that the trial court erred in admitting into evidence the written statement of Jones. Defendant asserts that Jones' written statement did not corroborate Jones' trial testimony. We first note that defendant failed to object to the allegedly incompetent corroborative testimony at trial. Instead, defendant made a general broadsided objection to the statement.

"The law is well-settled that a witness's prior consistent statement may be admitted into evidence where the statements corroborate the witness's in-court testimony." *State v. Jones*, 110 N.C. App. 169, 173, 429 S.E.2d 597, 599 (1993). However, " '[i]n a noncapital case, where portions of a statement corroborate and other portions are incompetent because they do not corroborate, the defendant *must* specifically object to the incompetent portions.' " *Jones*, 110 N.C. App. at 173, 429 S.E.2d at 600 (quoting *State v. Harrison*, 328 N.C. 678, 682, 403 S.E.2d 301, 304 (1991)) (emphasis added). "Where a defendant in a noncapital trial makes only a broadside objection to the allegedly incompetent corroborative testimony, the assignment of error is waived." *Id.*; *See State v. Benson*, 331 N.C. 537, 549, 417 S.E.2d 756, 764 (1992). We nevertheless elect to grant review of the issue. *See* N.C.R. App. P. 2 (2001).

Defendant contends that the most egregious error in admission of Jones' written statement was allowing the last portion of the statement wherein Jones states that ". . . when the next day came, lots of

people [were] calling me asking if [defendant] killed Tanika. The next day is when I moved to . . . is when I knew what happened on Sykes Avenue." Assuming for the benefit of argument that this was error, the error was not prejudicial to defendant. Given the other evidence which includes defendant's written confession, defendant has not shown that a reasonable possibility exists that without the statement the jury would have reached a different result.

For the reasons contained herein, we hold that the trial court did not err.

No error.

Judges BIGGS and BRYANT concur.