An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-580

NORTH CAROLINA COURT OF APPEALS

Filed: 18 February 2014

STATE OF NORTH CAROLINA

|  |  |
|---|---|
| v. | Mecklenburg County |
|  | Nos. 12 CRS 17112 |
| TERRANCE L. ALEXANDER, | 12 CRS 203042 |
| Defendant. | 12 CRS 203044 |

Appeal by defendant from judgment entered 29 November 2012 by Judge Anna Mills Wagoner in Mecklenburg County Superior Court. Heard in the Court of Appeals 24 October 2013.

*Attorney General Roy Cooper, by Assistant Attorney General Richard A. Graham, for the State.*

*Richard J. Costanza for defendant-appellant.*

GEER, Judge.

Defendant Terrance L. Alexander appeals from his convictions of felony breaking and entering, larceny after breaking and entering, and being a habitual felon. On appeal, defendant primarily argues that the trial court erred in denying his motion to dismiss because the State failed to present substantial evidence that defendant was the perpetrator of the charged offenses. Based on (1) the State's evidence that

defendant's palm print was found at the entry point of the breaking and entering, which was a dislodged sliding screen door leading to the victim's second floor apartment balcony and (2) the victim's testimony that defendant had never been permitted access inside his apartment beyond the very front entrance and that defendant had never been on the victim's balcony, we hold that the State presented substantial evidence that defendant committed the charged offenses, and the trial court, therefore, properly denied defendant's motion to dismiss.

## Facts

The State's evidence tended to show the following facts. Hassan Nelson lived in a second floor apartment in Charlotte, North Carolina. On 14 January 2012, Mr. Nelson left his apartment for a trip out of town, returning two days later on 16 January 2012. Upon driving into the parking lot of his apartment building, Mr. Nelson saw and briefly spoke with defendant who was a neighbor living in an apartment on the first floor of the building.

When Mr. Nelson reached his own apartment, he found that his front door was open, and his apartment "had been broken into." Mr. Nelson had left the sliding glass door leading to his second floor balcony locked, but the door had been pried open, damaging the bar used to secure the door. The outdoor

sliding screen had been taken off its track and set to the side of the door. Mr. Nelson's closet was "trashed," his nightstand drawers had been opened, and Mr. Nelson's safe and watch were missing. The stolen safe contained tax papers, the title to Mr. Nelson's truck, a ring, and $1,800.00 in cash.

Mr. Nelson called the police, and Officer Stephen Blackwell of the Charlotte-Mecklenburg Police Department responded and determined the sliding glass door to be the point of entry. Another officer collected finger and palm prints from the metal frame of the sliding screen door that had been dislodged. Subsequent latent fingerprint examination revealed that the palm print taken from the metal frame of the screen door matched defendant's palm print.

Officer Blackwell canvassed the apartment building, telling residents there had been a burglary and asking whether residents had seen anything unusual in the past few days. While doing so, he spoke to defendant, and defendant stated he had not seen anything unusual.

Prior to the break-in, Mr. Nelson and defendant were acquainted. Defendant had sold Mr. Nelson DVDs on several occasions, and Mr. Nelson had once showed defendant a pair of binoculars. Although defendant had been "probably a foot" inside the front door of Mr. Nelson's apartment prior to the

break-in, defendant had never been further into the apartment and had never been on the balcony. Mr. Nelson did not give defendant permission to enter his apartment during the period between 14 to 16 January 2012.

On 9 April 2012, defendant was indicted for felonious breaking and entering, larceny after breaking and entering, and being a habitual felon. Defendant did not present evidence at trial. The jury found defendant guilty of felonious breaking and entering and larceny after breaking and entering. Defendant then pled guilty to being a habitual felon. The trial court consolidated defendant's convictions into a single judgment and sentenced defendant to a presumptive-range term of 78 to 106 months imprisonment. Defendant appeared in open court the day after his trial ended and gave oral notice of appeal.

## Discussion

As an initial matter, we must address this Court's jurisdiction over defendant's appeal. Defendant failed to give oral notice of appeal *at trial* and failed to file a written notice of appeal, the only two modes of appeal available under Rule 4 of the Rules of Appellate Procedure. *See State v. Oates*, 366 N.C. 264, 268, 732 S.E.2d 571, 574 (2012) (explaining Rule 4 requires either "oral notice of appeal, but only if given at the

time of trial or . . . of the pretrial hearing," or filed, written notice of appeal).

Although defendant attempted to give oral notice of appeal in open court the day after his trial ended, that notice was not effective and defendant has failed to timely appeal the judgment. *Id.* We nonetheless elect to deem defendant's brief a petition for writ of certiorari, and we exercise our discretion to grant the petition in order to reach the merits of defendant's appeal. *See* N.C.R. App. P. 21(a)(1) (providing "writ of certiorari may be issued in appropriate circumstances" when "right to prosecute an appeal has been lost by failure to take timely action"); *State v. May*, 207 N.C. App. 260, 262, 700 S.E.2d 42, 44 (2010) (electing to "treat defendant's brief as a petition for writ of certiorari and allow it for the purpose of considering his contentions upon their merits").

I

Defendant first argues that the trial court erred in denying his motion to continue because his trial counsel had inadequate time to prepare for trial under the circumstances and, with more time, defense counsel could have more fully investigated the case and presented a better defense. Defendant contends that the trial court's denial of his motion to continue resulted in the denial of defendant's right to effective

assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 19 and 23 of the North Carolina Constitution.

At roughly 2:00 p.m. on Monday, 26 November 2012, the prosecutor indicated that he intended to call defendant's case for trial. One of defendant's trial counsel[1] stated that he was "not making a motion to continue" because defendant had asked him not to do so, but counsel wanted to note for the record that he discussed the case with defendant for the first time that morning. Counsel explained that he had attempted to meet with defendant the previous week but the meeting did not occur. Counsel then stated: "I just would say for the Court that I have a lot of experience trying property cases in particular. This is a property felony case. And I feel confident that I can represent and defend [defendant] expertly . . . ."

The trial court then asked defendant whether it was "all right" with defendant for the trial to begin that day, and defendant stated that beginning trial that day "sounded like the

---

[1]Defendant was represented by two attorneys at trial: Jason St. Aubin of the Mecklenburg County Public Defender's Office and Leslie Cockrell, apparently also with the Public Defender's Office. Mr. St. Aubin appears to have been defendant's primary attorney, and he made all of the relevant statements to the trial court regarding defendant's motion to continue. Mr. St. Aubin presented defendant's closing argument and cross-examined five of the State's six witnesses. Ms. Cockrell gave defendant's opening statement and cross-examined one of the State's six witnesses.

best" of the "possible choices" he had. Defendant elaborated that he believed that because he had already failed to meet with his attorney, moving to continue could result in defendant being placed in jail. Defense counsel clarified he had informed defendant that "it's always a possibility" that when "a case is continued because somebody hasn't had a chance to meet with their attorney, . . . if the judge feels strongly that they need added incentive to meet with their attorney that they could be placed in custody for a period of time in order for that to happen."

The trial court then asked defendant, "Do you feel competent [sic] that your lawyer can represent your interests well?" Defendant responded, "As confident as I can be, ma'am." The trial court then held an unrecorded bench conference, after which the court stated, "If we do begin with this, the State wants to call it tomorrow . . . ."

After speaking further with defendant, defense counsel then moved for a continuance. As the basis for his motion, counsel stated that he was assigned defendant's case on 11 October 2012 and received the file on 12 or 13 October 2012. Counsel further stated that at the same time he was assigned defendant's case, he was assigned 40 habitual felon cases, and counsel spent the month of October addressing matters in the other cases. Counsel

explained that he had finished the work on the other habitual felon cases during the first week of November 2012, "approximately two weeks" prior to 26 November 2012, and attempted to contact defendant at that time but "did not have any success."

Counsel further explained that he then successfully contacted defendant "this past Monday," 19 November 2012, and scheduled an afternoon meeting with defendant at the Public Defender's Office on Tuesday, 20 November 2012. Defendant failed to attend that meeting. Counsel called defendant the following morning and told defendant to either meet him at the Public Defender's Office that Wednesday, 21 November 2012, or else defendant would need to be present in court for calendar call the following Monday morning, 26 November 2012. Because it was Thanksgiving week, the Public Defender's Office was closed on Thursday and Friday. Defendant appeared for court on Monday morning, 26 November 2012, and counsel discussed the case with defendant that morning for the first time.

Counsel then advised the trial court: "I have reviewed [defendant's] file. I have reviewed all the discovery in this matter. I feel personally that I'm ready to handle the case. In all candor to the Court, this is a case that I can go to trial and proceed to trial on, but I understand my client's

hesitancy, especially because he's facing in the neighborhood of close to -- I believe it could be up to 160 months if both cases are habitual and both are back to back. So understanding that that's a great magnitude and a great deal of time, juxtaposing that with the fact that we just met, that would be the concern that I have. But I just would say for the Court and for the district attorney that I told them that I feel I could -- if my motion is denied, I am ready to try this case."[2]

The court then denied defendant's motion, reasoning (1) that "it appears that [defendant's] having no contact with [counsel] is perhaps of his own doing, he could have come in last week to see you at your request[,]" and (2) "[t]he State has advised the Court that it will not begin evidence until tomorrow, so that would give you some time to meet with him later this afternoon and over tonight, and I think that should get everybody up to speed." The parties then engaged in jury selection for the remainder of the day and for several hours the next morning, until the jury was impanelled at roughly 11:00 a.m. and the trial began.

As an initial matter, defendant contends his constitutional argument is preserved for appeal since defense counsel "told the

---

[2]The record does not appear to contain any information regarding the preparation of defendant's other attorney, Ms. Cockrell, for trial.

trial court he just met his client," "addressed his workload," and "voiced his confidence level about proceeding." However, defense counsel's motion to continue was based on the fact that counsel had just met defendant earlier that day and that defendant faced a lengthy sentence. Despite having just met defendant that morning, counsel repeatedly asserted that he was fully prepared to effectively represent defendant. Under these circumstances, we cannot conclude that the trial court was fairly presented with the question whether denial of defendant's motion to continue would violate defendant's right to effective assistance of counsel. Defendant's constitutional argument is not, therefore, properly preserved for appeal. *See State v. Braxton*, 352 N.C. 158, 173, 531 S.E.2d 428, 436-37 (2000) ("Constitutional questions 'not raised and passed upon in the trial court will not ordinarily be considered on appeal.'" (quoting *State v. Hunter*, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982))).

Even assuming defendant had sufficiently raised a constitutional argument below, defendant argued to the trial court a different theory in support of his motion for a continuance than that argued on appeal. At trial, defendant asked for a continuance because counsel and defendant had only just met and defendant faced a considerable sentence if

convicted. On appeal, however, defendant argues that the trial court should have granted his motion to continue to allow defendant more time to investigate the case, including time to interview Mr. Nelson and to develop a strategy to "properly attack" the State's expert fingerprint evidence "in light of scientific advances," such as those outlined in a National Academy of Science report cited in defendant's brief.

"Our Supreme Court 'has long held that where a theory argued on appeal was not raised before the trial court, the law does not permit parties to swap horses between courts in order to get a better mount' in the appellate courts." *State v. Holliman*, 155 N.C. App. 120, 123, 573 S.E.2d 682, 685 (2002) (quoting *State v. Sharpe*, 344 N.C. 190, 194, 473 S.E.2d 3, 5–6 (1996)). Here, defendant did not ask the trial court to continue his case to allow him more time to investigate and to develop his defense to the State's expert fingerprint evidence. Because the arguments made on appeal were not preserved at the trial level, we do not address them.

II

Defendant next argues that the trial court erred in denying his motion to dismiss the charges of felony breaking and entering and larceny after breaking and entering. Defendant contends that the only evidence tending to show he committed the

crimes was evidence of his palm print on the frame of the second floor balcony screen door, which, defendant argues, the State did not sufficiently show could only have been impressed at the time the crimes were committed.

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). "'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.'" *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980).

In this case, the State's evidence tending to show defendant was the perpetrator consisted primarily of the fact that defendant's palm print was found on the frame of the sliding screen door that had been removed from its track and placed on the second floor balcony of Mr. Nelson's apartment. "Fingerprint evidence, standing alone, is sufficient to

withstand a motion for nonsuit only if there is '*substantial* evidence of circumstances from which the jury can find that the fingerprints could only have been impressed at the time the crime was committed.'" *State v. Irick*, 291 N.C. 480, 491-92, 231 S.E.2d 833, 841 (1977) (quoting *State v. Miller*, 289 N.C. 1, 4, 220 S.E.2d 572, 574 (1975)). "Circumstances tending to show that a fingerprint lifted at the crime scene could only have been impressed at the time the crime was committed include . . . statements by prosecuting witnesses that they had never seen the defendant before or given him permission to enter the premises . . . ." *Id.* at 492, 231 S.E.2d at 841.

In this case, Mr. Nelson testified that although he was acquainted with defendant, defendant had never been more than a foot inside the doorway of Mr. Nelson's apartment, and had never been on the balcony. The State's evidence further tended to show that the metal screen door was removed by the perpetrator in order to gain entry to the house and was located on a second floor balcony that was not generally accessible to the public. This evidence constituted substantial evidence of circumstances from which the jury could find that defendant's palm print could only have been impressed at the time the crimes were committed. *See State v. Foster*, 282 N.C. 189, 198, 192 S.E.2d 320, 326 (1972) (holding State presented substantial evidence that

defendant's fingerprint found on flowerpot inside victims' house could only have been impressed at time of crime when victims "testified they did not know defendant and had never given him permission to enter their home," defendant testified he had never been inside victims' house, and flowerpot had been inside house for three years and was frequently washed).

Defendant nonetheless cites *State v. Bass*, 303 N.C. 267, 278 S.E.2d 209 (1981), and *State v. Gilmore*, 142 N.C. App. 465, 542 S.E.2d 694 (2001), in support of his argument. However, in those cases there was evidence that the defendants could have left the fingerprints at the respective crime scenes at times other than during commission of the charged offenses. *See Bass*, 303 N.C. at 272-73, 278 S.E.2d at 213 (holding State did not present substantial evidence defendant's prints on window screen of house could only have been impressed when charged offense committed because defendant testified he broke into same house, through relevant window, three or four weeks prior to charged offense and committed a larceny at that time, and State's rebuttal evidence supported defendant's testimony); *Gilmore*, 142 N.C. App. at 470, 542 S.E.2d at 698 (holding State did not present substantial evidence that defendant's print on piece of glass from broken store window, which was located on ground outside store, was impressed at time of commission of crime

since outside portion of window was accessible to public, officer who lifted print did not determine whether print was made on inside or outside portion of window glass, and State presented evidence that defendant was a customer in store near or on day of break-in). *Bass* and *Gilmore* are, therefore, distinguishable.

We hold that the State's palm print evidence, along with the substantial evidence that the palm print could only have been impressed at the time of the commission of the charged offenses, constituted substantial evidence that defendant was the perpetrator of the breaking and entering and larceny after breaking and entering offenses. Consequently, the trial court did not err in denying defendant's motion to dismiss.

### III

Finally, defendant argues that he received ineffective assistance of counsel ("IAC") when his trial counsel (1) argued a certain theory of the case during the opening statement but then failed to present evidence supporting that theory of the case and appeared to adopt a different theory mid-trial and (2) failed to move for a mistrial when the victim, Mr. Nelson, gave previously undisclosed testimony at trial that materially conflicted with the theory of the case presented by defense counsel during defendant's opening statement.

In order to prevail on an IAC claim,

> "[f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985) (emphasis omitted) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984)).

The North Carolina Supreme Court has held that

> ineffective assistance of counsel claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing. Thus, when this Court reviews ineffective assistance of counsel claims on direct appeal and determines that they have been brought prematurely, we dismiss those claims without prejudice, allowing defendant to bring them pursuant to a subsequent motion for appropriate relief in the trial court.

*State v. Thompson*, 359 N.C. 77, 122-23, 604 S.E.2d 850, 881 (2004) (internal citation and quotation marks omitted).

The United States Supreme Court has explained more specifically why IAC claims should rarely be raised on direct appeal:

> When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose. . . . The evidence introduced at trial . . . will be devoted to issues of guilt or innocence, and the resulting record in many cases will not disclose the facts necessary to decide either prong of the *Strickland* analysis. If the alleged error is one of commission, the record may reflect the action taken by counsel but not the reasons for it. The appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse. . . . The trial record may contain no evidence of alleged errors of omission, much less the reasons underlying them. . . . Without additional factual development, moreover, an appellate court may not be able to ascertain whether the alleged error was prejudicial.

*Massaro v. United States*, 538 U.S. 500, 504-05, 155 L. Ed. 2d 714, 720-21, 123 S. Ct. 1690, 1694 (2003). In this case, we cannot determine from the record either that defense counsel acted unreasonably or that counsel's actions or omissions had a probable impact on the verdict.

With respect to defendant's argument that his counsel failed to present evidence in support of the theory presented in

defendant's opening statement, the record reveals that the defense's opening statement was consistent with an incriminating recorded statement made by defendant. The State in its opening statement had specifically promised to present that recorded statement to the jury.

Subsequently, however, Mr. Nelson testified in a manner that negated the defense theory. It is undisputed that the State was unaware that Mr. Nelson would testify in that manner. Then, the State elected not to present any evidence at all regarding defendant's recorded statement.

Given Mr. Nelson's testimony and the State's unexpected election not to offer evidence of defendant's incriminating statements, we cannot conclude that defense counsel must have acted without any strategic basis when counsel decided not to present evidence of defendant's explanation for his presence in the apartment. Since the State had not relied upon the recorded statement, defense counsel would have been forced to offer defendant's own testimony, which would have opened the door to the jury's hearing about defendant's four prior breaking and entering convictions, a possession of stolen goods conviction, and a common law robbery conviction.

Defense counsel may well have decided that, in light of the State's decision not to present the incriminating recorded

statement by defendant, it was better to lose some credibility with the jury by not following up on the promises made in the defense's opening statement than to potentially disclose defendant's prior convictions to the jury. Defense counsel was also able, in the closing argument, to attack the State's failure to present that recorded statement and another pretrial statement by defendant, an argument that likely would have been unavailable had defendant elected to present evidence consistent with the opening statement.

Similarly, we cannot conclude on the basis of this record that defendant received IAC because his counsel failed to move for a mistrial. We do not agree with appellate counsel that trial counsel could have had no strategic reason for not moving for a mistrial. Nor can we determine, on this record, given the unexpected decision of the State to not use defendant's pretrial statements, that the failure to move for a mistrial was sufficiently prejudicial to warrant a finding of IAC. Consequently, we dismiss defendant's IAC arguments without prejudice to defendant's asserting them in a motion for appropriate relief.

No error.

Judges STEPHENS and ERVIN concur.

Report per Rule 30(e).