An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-86

Filed: 20 October 2015

Durham County, No. 13 CRS 54257

STATE OF NORTH CAROLINA

v.

SHANTELL RENE MANGUM

Appeal by defendant from judgment entered 23 July 2014 by Judge Orlando F. Hudson in Durham County Superior Court. Heard in the Court of Appeals 12 August 2015.

> *Roy Cooper, Attorney General, by Hilda Burnett-Baker, Special Deputy Attorney General, for the State.*
>
> *Ward, Smith & Norris, P.A., by Kirby H. Smith, III, for defendant-appellant.*

DAVIS, Judge.

Shantell Rene Mangum ("Defendant") appeals from the trial court's 23 July 2014 judgment entered on her conviction for obtaining property by false pretenses. In her sole argument on appeal, Defendant contends that the trial court erred in denying her motion to dismiss based on a fatal variance between the indictment and the evidence at trial. After careful review, we conclude that she received a fair trial free from error.

**Factual Background**

The State's evidence at trial tended to establish the following facts: On 2 November 2012 at approximately 10:00 a.m., Josh Finley ("Josh") returned to the home in Durham, North Carolina that he shared with his mother Corrine Finley ("Corrine") and brothers after working a nightshift and discovered that the back door and back window were open. He also noticed that the door to his bedroom, which he typically closed when he left the house for work, was open. When he entered his bedroom, he discovered that his Xbox 360 gaming system, controllers, several games, and a laptop along with an indeterminate amount of cash were missing. He told his mother about the missing items, and she called the police, informing the officers that someone had broken into the house.

At approximately 2:00 a.m. on that same date, a group of male youths had come to the Finleys' house looking for Josh. Corrine informed the youths that Josh was not home and returned to bed. Corrine identified Defendant's son, Nathan Harris ("Nathan"), as one of the youths.

Seven months later, on 6 May 2013, Detective Greg Silla ("Detective Silla") of the Durham City Police Department went to Pat's Pawn Shop after receiving information from his colleague, Detective Charles Britt, that an Xbox with the same serial number as the Xbox taken from the Finleys' home had been pawned there. Detective Silla retrieved from the pawn shop the Xbox, two video games, and three

controllers that had been taken from the Finleys' residence. He also obtained the pawn receipt from the shop, which listed Defendant as the individual who had pawned these items on 21 December 2012. According to Tori McLaurin, the senior pawnbroker at Pat's Pawn Shop, Defendant had received a $135.00 loan in exchange for the pawned items.

On 16 December 2013, a grand jury returned a bill of indictment charging Defendant with obtaining property by false pretenses.[1] A jury trial was held in Durham County Superior Court beginning on 21 July 2014 before the Honorable Orlando F. Hudson. Following the State's case-in-chief, Defendant called her son Nathan as a witness, and he testified that he obtained the Xbox, controllers, and games from an individual named "Pop" for $80.00 and decided to pawn these items in December so he could afford to buy a birthday present for his girlfriend. Nathan stated that he went with Defendant to Pat's Pawn Shop and attempted to pawn the Xbox, controllers, and games but was unable to do so because he had forgotten to bring a form of identification.

Defendant then testified on her own behalf. She stated that rather than drive her son back home to retrieve his identification, she chose to pawn the items for him and the pawnbroker allowed her to do so. She then proceeded to give Nathan the money she had received from this transaction. Defendant testified that she was not

---

[1] The indictment also listed a charge of misdemeanor possession of stolen goods, but the State elected not to proceed with this charge at the beginning of trial.

aware — and had no reason to believe — that the Xbox, games, and controllers were stolen property.

On 23 July 2014, the jury found Defendant guilty of obtaining property by false pretenses. The trial court entered judgment on the jury's verdict, sentencing her to 5 to 15 months imprisonment. The court then suspended the sentence and placed her on 12 months of supervised probation. Defendant gave notice of appeal in open court.

**Analysis**

In her sole argument on appeal, Defendant contends that the trial court erred in denying her motion to dismiss because there was a fatal variance between the allegations of the indictment and the State's proof at trial. We disagree.

A variance occurs when the allegations contained in the indictment charging a defendant with a criminal offense do not conform to the evidence produced at trial. *State v. Norman*, 149 N.C. App. 588, 594, 562 S.E.2d 453, 457 (2002). A fatal variance is a proper basis for a motion to dismiss because a defendant "must be convicted, if at all, of the particular offense charged in the indictment," and a fatal variance between the indictment and the evidence at trial could deprive the defendant of adequate notice to prepare her defense. *State v. Holanek*, ___ N.C. App. ___, ___, 776 S.E.2d 225, 234 (2015) (citation and quotation marks omitted). "However, not every variance is fatal, because in order for a variance to warrant reversal, the variance must be material. A variance is not material, and is therefore not fatal, if it does not involve

an essential element of the crime charged." *State v. Henry*, ___ N.C. App. ___, ___,765 S.E.2d 94, 102-03 (2014) (citation, quotation marks, and brackets omitted), *disc. review denied*, ___ N.C. ___, 775 S.E.2d 852 (2015). Indeed, "[a]llegations beyond the essential elements of the crime sought to be charged are irrelevant and may be treated as surplusage." *State v. Rhome*, 120 N.C. App. 278, 299, 462 S.E.2d 656, 670 (1995) (citation and quotation marks omitted).

In the present case, Defendant was charged with obtaining property by false pretenses in violation of N.C. Gen. Stat. § 14-100. The elements of this offense are as follows: "(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another." *State v. Cronin,* 299 N.C. 229, 242, 262 S.E.2d 277, 286 (1980).

In the indictment, Defendant was charged with obtaining $135.00 in United States currency from "Carolina Jewelry & Pawn, Inc., d/b/a Picasso Pawn (Pat's Pawn Shop)" by means of the false pretense of "selling a black Xbox Serial Number 270004110905, three Xbox controllers and Mass 3 Effect and Dishonored video games as though they were hers, when the property was stolen and the defendant was not the true owner," which was intended to deceive and did, in fact, deceive.

At trial, however, the witnesses referred to the pawn shop in question as Pat's Pawn Shop, and there was no evidence introduced that this store was owned by

Carolina Jewelry & Pawn, Inc. Defendant contends that this variance between the indictment and the proof at trial was material and therefore fatal, arguing that while the name "Carolina Jewelry & Pawn, Inc." would sufficiently demonstrate that the business is a legal entity capable of owning property by virtue of its incorporated status, the same is not true for "Pat's Pawn Shop."

Defendant then cites numerous property offense cases for the propositions that (1) indictments charging such offenses must specifically allege the owner of the property at issue; and (2) if the owner is not a natural person, then the indictment must specifically allege that the owner is a legal entity capable of owning property. *See, e.g., State v. Price*, 170 N.C. App. 672, 673-74, 613 S.E.2d 60, 62 (2005) (explaining that element of ownership is essential in injury to personal property and larceny offenses and indictments failing to allege legal entity capable of owning property are fatally defective); *State v. Hughes*, 118 N.C. App. 573, 576, 455 S.E.2d 912, 914 (holding that indictment for embezzlement must allege person or entity capable of ownership owned property at issue and "[w]hen proof of ownership at trial varies from the allegation of ownership in the indictment, the indictment is invalid"), *disc. review denied*, 340 N.C. 570, 460 S.E.2d 326 (1995).

None of the cases cited by Defendant, however, involved the offense of obtaining property by false pretenses. Consequently, they are not controlling on the

question of whether a variance concerning the identity of the owner of the obtained property is fatal to a prosecution for this particular offense.

Indeed, we have previously held that such a variance is *not* fatal in the context of an obtaining property by false pretenses charge. In *State v. Seelig*, ___ N.C. App. ___, 738 S.E.2d 427, *disc. review denied*, 366 N.C. 598, 743 S.E.2d 182 (2013), the defendant was convicted of 23 counts of obtaining property by false pretenses arising from his ownership and operation of Great Specialty Products, a company that sold bread and other baked goods that were all advertised as homemade and gluten free. *Id.* at ___, 738 S.E.2d at 430. The baked goods sold by the defendant and his employees were neither homemade nor gluten free. Instead, these items were purchased primarily from another bakery, which utilized gluten in its manufacturing process, and then repackaged for sale by the defendant. *Id.* at ___, 738 S.E.2d at 430. Indictments were issued charging the defendant with numerous counts of obtaining property by false pretenses based on allegations that he had obtained U.S. currency from various consumers by fraudulently representing that his products did not contain gluten. *Id.* at ___, 738 S.E.2d at 430-31.

In one of the indictments, the defendant was alleged to have obtained property by false pretenses from Ms. Amee Wojdyla. On appeal, the defendant argued that the trial court had erred in denying his motion to dismiss as to this particular count "because the indictment specifically alleged that defendant obtained value from Ms.

Wojdyla, but the State's evidence showed only that defendant obtained value from

Ms. Wojdyla's husband." *Id.* at ___, 738 S.E.2d at 438. We rejected the defendant's

contention that this discrepancy between the indictment and the evidence constituted

a fatal variance, explaining that

> [a]n indictment for obtaining property by false pretenses need not allege the name of any particular victim because N.C. Gen. Stat. § 14-100(a) does not require that the State prove an intent to defraud any particular person. Indeed, N.C. Gen. Stat. § 14-100(a) specifically provides:
>
>> It shall be sufficient in any indictment for obtaining or attempting to obtain any such money, goods, property, services, chose in action, or other thing of value by false pretenses to allege that the party accused did the act with intent to defraud, *without alleging an intent to defraud any particular person, and without alleging any ownership of the money, goods, property, services, chose in action or other thing of value*; and upon the trial of any such indictment, it shall not be necessary to prove . . . an intent to defraud any particular person . . . *but it shall be sufficient to allege and prove that the party accused made the false pretense charged with an intent to defraud.*
>
> (Emphasis added.)
>
> Since an indictment need only allege an intent to defraud and need not allege any person's ownership of the thing of value obtained by the false pretense, when the indictment includes the name of the victim, that allegation is surplusage and any variation between the allegations in the indictment and the evidence at trial as to the name of the victim is not fatal.

*Id.* at \_\_\_, 738 S.E.2d at 438 (internal citations, quotation marks, and brackets omitted).

Thus, in accordance with both *Seelig* and the plain language of N.C. Gen. Stat. § 14-100, we conclude that the indictment charging Defendant with obtaining property by false pretenses was not required to specifically identify the legal owner of the $135.00 in U.S. currency that Defendant obtained by means of her false pretense. Consequently, the indictment's allegation that Defendant obtained the money "from Carolina Jewelry & Pawn, Inc., d/b/a Picasso Pawn (Pat's Pawn Shop)" was mere surplusage, and the fact that the evidence at trial identified the entity solely as Pat's Pawn Shop does not require dismissal of the charge. *See id.* at \_\_\_, 738 S.E.2d at 438-39 (concluding that variance concerning identity of particular victim was not fatal because indictment's averment of victim's name was a nonmaterial allegation and not an essential element); *see also State v. Glynn*, 178 N.C. App. 689, 696, 632 S.E.2d 551, 556 ("Only a material variance warrants reversal, as it involves an essential element of the alleged crime."), *appeal dismissed and disc. review denied*, 360 N.C. 651, 637 S.E.2d 180-81 (2006). The trial court therefore properly denied Defendant's motion to dismiss.[2]

## Conclusion

---

[2] Likewise, the fact that the trial court's restitution order required Defendant to pay $135.00 in restitution to "Pat's Pawn Lejune [sic] Pawn Inc." is irrelevant and does not support Defendant's assertion of a fatal variance.

For the reasons stated above, the trial court did not err in denying Defendant's motion to dismiss.

NO ERROR.

Chief Judge McGee and Judge Hunter, Jr. concur.

Report per Rule 30(e).